## THE STATE v. EVERETT BAIRD, Appellant.

### Division Two, May 26, 1921.

1. **MURDER: Circumstantial Evidence: Instruction.** In a prosecution for murder, where defendant admitted the killing and nothing was left for the jury to determine from the circumstances except as to who was the aggressor and whether there was justification for the act or facts which would mitigate the crime, it was not necessary for the trial court to instruct the jury in regard to circumstantial evidence.

2. ————: **Good Character of Defendant: Instruction.** In a prosecution for murder, where defendant did not put his character in issue and offered no evidence as to good character, but testified in his own behalf, the State had a right to impeach him "as any other witness" (Section 4036, Revised Statutes 1919) but did not have a right, for the purpose of impeaching him as a witness, to show that he was of bad character as a quarrelsome, turbulent and dangerous man. Such evidence did not tend to impeach him as a witness but was an assault upon him as a defendant. And the State having produced witnesses to prove defendant's bad character, in the respects stated, who testified that his character was not bad in those respects at the time of the homicide, and defendant's character having thus been put in issue it was the duty of the trial court, under Section 4025, Revised Statutes 1919, to instruct the jury as to defendant's good character, such instruction being "necessary" within the meaning of said section.

Appeal from Pemiscot Circuit Court.—*Hon. Sterling H. McCarty,* Judge.

REVERSED AND REMANDED.

*Mayes & Gossom* for appellant.

(1) The court erred in failing to instruct the jury as to the good character of the defendant upon defendant's request so to do. R. S. 1919, sec. 4025; State v. Anslinger, 171 Mo. 600; State v. O'Conner, 31 Mo. 389;

State v. Cook, 207 S. W. 833; State v. Tender, 204 S. W. 735; State v. Byrd, 213 S. W. 37. (a) And it makes no difference whether the evidence of good character was adduced by the State or the defendant. State v. Birdstrup, 237. Mo. 273. (2) The court erred in refusing defendant's request to instruct the jury on all questions of law necessary for their information in arriving at a just verdict and especially in refusing the request of the defendant to instruct the jury on circumstantial evidence. State v. Barton, 214 Mo. 316; State v. Bobbitt, 215 Mo. 10; State v. Massey, 204 S W. 543; State v. Donnelly, 130 Mo. 643; State v. Francis, 199 Mo. 671. (3) The innocence of the defendant is presumed until his guilt is established beyond a reasonable doubt, either by direct and positive proof or by circumstantial evidence. The presumption of innocence is not overcome by mere proof that the defendant killed the deceased, when all the evidence in the case shows that he killed the deceased in self-defense. A verdict cannot stand that rests solely upon conjecture and suspicion. State v. Glahn, 97 Mo. 679; State v. Nesenhener, 164 Mo. 461; State v. Francis, 199 Mo. 671; State v. Gordon, 199 Mo. 561.

*Jesse W. Barrett,* Attorney-General, and *J. Henry Caruthers,* Special Assistant Attorney-General, for respondent.

(1) No substantial evidence of good character was adduced. State v. Byrd, 213 S. W. 37; State v. Gartrell, 171 Mo. 519; State v. Anslinger, 171 Mo. 606; State v. Cook, 207 S. W. 833; State v. Hooper, 71 Mo. 430-1. (2) The State did not seek to convict defendant upon circumstantial evidence alone, hence the refusal of the court to give such instruction is not error. State v. Babbitt, 215 Mo. 43; State v. Donnelly, 130 Mo. 649; State v. Fairlamb, 121 Mo. 147; State v. Gartrell, 171 Mo. 519; State v. Robinson, 117 Mo. 663; State v. Massey, 204 S. W. 543; State v. Crone, 209 Mo. 330.

WHITE, C.—The appellant, March 23, 1920, in the Circuit Court of Pemiscot County was convicted of murder in the second degree, and his punishment fixed at imprisonment in the penitentiary for a term of fifteen years. He was charged with having killed one Will Jenkins on the tenth day of August, 1919.

Jenkins and Baird were farmers and lived near each other, their two houses being about a hundred yards apart. It seems that Jenkins was making a crop on the shares for Baird. The two men had had some difficulty; the evidence showed that each had made violent threats against the other. The houses of the two men fronted east, and it appears that a division fence, somewhere near midway between the two houses, separated their respective enclosures, Baird's house being on the south. To the rear, and a little to the north of Baird's house was his barn. North of the barn, across the fence, was Jenkins' cornfield. There was no witness to the homicide except the defendant himself. Jenkins' body, a few moments after he was shot, was found a few feet from the division fence inside his cornfield, among the cornstalks. The State attempted to show the shot which killed Jenkins was fired from a window in the loft of Bairds' crib, which window was about 18 or 20 feet south of where Jenkins' body lay. He was killed with a shotgun and according to the testimony the wounds ranged downward indicating that he was shot from an elevation. Baird admitted he killed Jenkins with a shotgun and explained to several persons who testified for the State how it occurred. It is claimed by the State that those explanations were inconsistent.

According to the evidence offered by the defendant, on the morning before the tragedy, about 8:30 in the morning, Baird went away from home to a little town called Netherlands. While he was gone his wife and Jenkins' wife had a quarrel about vegetables in the garden. It seems that the gardens of the two were enclosed together. A short time afterwards Jenkins appeared at

<div style="margin-left:2em; font-size:small;">Statement.</div>

the milk house in Baird's yard where Mrs. Baird was and abused her violently, threatening to kill the defendant. He had a shotgun at the time and went off through the field, Mrs. Baird thought hunting for her husband. Mrs. Baird then brought out her husband's shotgun and when he returned from town she told him of the altercation. Soon afterwards Jenkins appeared with his gun, apparently "stalking" the defendant, peeping around his barn as if to discover where he was. After watching for a time the defendant stepped out into the open, and after a few remarks and gestures from which appellant claimed he thought Jenkins was about to shoot him he fired the fatal shot. Eleven shot took effect in Jenkins' head, killing him instantly. Evidence was offered by defendant to prove that Jenkins was a violent, turbulent, quarrelsome character. Evidence also was offered by the State as to the defendant's character, which will be noted later in the opinion.

The evidence indicates that Jenkins fell where he lay, about 18 or 20 feet north of the window in the loft of the defendant's barn, and about five feet north of the division fence. The stalks of corn near the body showed the marks of a shot. With the view we take of the case it is unnecessary to set out the evidence at greater length.

I. The appellant assigns error to the failure of the court fully to instruct the jury on all the questions of law involved in the case. He claimed the court should have instructed in regard to circumstantial evidence. The court must instruct the jury in regard to it where the guilt of the defendant is established wholly by circumstantial evidence. Where the *fact* of the homicide by the *defendant* depends upon circumstances, such an instruction is necessary but not where the only resort to circumstantial evidence is for the purpose of showing the manner in which the homicide took place. [State v. Gartrell, 171 Mo. l. c. 519; State v. Crone, 209 Mo.

*Instruction: Circumstantial Evidence.*

288 Mo.—5

316, l. c. 331; State v. Bobbitt, 215 Mo. l. c. 43; State v. Massey, 274 Mo. 578, 204 S. W. l. c. 543.]

In this case the defendant admitted that he killed Jenkins; nothing was left for the jury to determine from circumstance except as to who was the aggressor, and whether there was justification for the act or facts which would mitigate the crime. Such instruction in this case was not necessary.

II. Error is further claimed in the failure of the court to instruct on the good character of the defendant. The statute (Section 4025, Revised Statutes 1919), requires the trial court, whether requested or not, to instruct the jury upon all question of law arising in a criminal case which instructions must include "whenever necessary, the subjects of good character and reasonable doubt."

<span style="float:left">——: Character of Defendant.</span>

The defendant did not put his character in issue, offered no evidence as to good character. He took the stand in his own behalf and the State had the right to impeach him "as any other witness." [See Sec. 4036, R. S. 1919.]

The State in rebuttal recalled three witnesses: B. F. Allen, William Foley, and C. L. Lefler. Allen testified as follows, without objection:

"Q. How long have you known Everett Baird? A. Known Everett Baird as far as I remember, I got acquainted with Everett Baird about 1906 or '07 as well as I remember.

"Q. Ask if you are acquainted with his general reputation for truth and veracity in the neighborhood in which he has lived? A. Never heard that discussed.

"Q. Ask whether or not you are acquainted with his general reputation as to being a dangerous, quarrelsome and turbulent character? A. Yes, sir, I am acquainted with it.

"Q. Is that good or bad? A. It is not bad for quarreling—(interrupted)

"Q. Dangerous? A.—and dangerous.

"Q. The full question. A. Not dangerous for quarreling and fighting unless you impose on him.

"By the Court: You say it is not bad for that?

"Witness: No, sir, it is not bad."

Foley testified that he did not know the defendant's general reputation in the neighborhood in which he lived for being a dangerous, quarrelsome, turbulent character.

Lefler testified without objection, as follows:

"Q. Mr. Lefler, I will ask whether or not you are acquainted with the general reputation of the defendant in this case for being a dangerous, quarrelsome and turbulent character? A. Yes sir.

"Q. Is that good or bad? A. Well, it is not so bad.

"Q. Is it good or bad? A. Well, lately he has been a pretty good man,—used to be when he got whiskey in him, of course, he didn't care much.

"Q. Since whiskey gone out he's done pretty well? A. Different man before whiskey went out.

"By the Court: How long back, do you say?

"Witness: I guess for a year or two."

The State had a right to show that defendant had a bad reputation for truth and veracity and that his general reputation for morality was bad, but it had no right, for the purpose of impeaching him as a witness, to show that he was of bad character as a quarrelsome, turbulent citizen. [State v. Beckner, 194 Mo. 281, l. c. 294-296; State v. Shuster, 263 Mo. l. c. 602; State v. Edmundson, 218 S. W. l. c. 865.] Such evidence did not tend to impeach the defendant in his character as a *witness,* but was an assault upon his character as a *defendant.* [State v. Beckner, supra, l. c. 294.] It was an attempt to show he possessed the very qualities which would affect his tendency to commit the crime of which he was charged.

It is claimed by the State that this evidence is not sufficient to warrant an instruction upon good character

because it is not substantial evidence of good character. This court has held that "whenever necessary" as used in the section of the statute quoted means, "whenever there is any substantial evidence of general reputation of such character offered in evidence." [State v. Cook, 207 S. W. 1. c. 833; State v. Byrd, 213 S. W. 37.] The case of State v. Anslinger, 171 Mo. 1. c. 608-609, is cited by the State in support of the propriety of the court's refusal to give such instruction. In that case a witness was charged with illegal and fraudulent voting. The character witness testified that the defendant was a hard-working and industrious man, and the court held, 1. c. 609, that there was not the slightest evidence upon the trait of character involved in the charge which rendered it necessary for the information of the jury to instruct upon the subject of good character; that a man might be a hard-working man and still be dishonest; it would not affect the trait of character which would lead him to vote illegally. In this case the questions were addressed to the very trait of character involved in the commission of the crime charged, whether the defendant was turbulent and dangerous. Allen testified that he was acquainted with Baird's reputation; that it was not bad for quarrelling and fighting. Lefler testified that he once had a bad reputation when he could get liquor, but that of late his reputation for being quarrelsome was not bad. This evidence was brought out by the State; it was not objected to by the defendant and was proper for the jury's consideration. That is, the State made an assault upon the defendant's character as a defendant, and the evidence tended to show the reverse of what was intended. We are unable to say that there was no substantial evidence that the defendant had a good character in that respect.

Further, having deliberately attacked the character of the defendant, treating the matter as being in issue, having made the attack with the expectation of proving a bad character, and having produced evidence tending

to show the contrary, the State is not in position to say that the issue was not before the jury. "Whenever necessary," as used in the statute, is not limited to cases where the defendant himself has offered evidence of his good character, but it must include any case where his character is put in issue and there is sufficient evidence to warrant a finding by the jury that his character is good.

The position of the State in this respect is like that of a party to a suit who offers evidence as if an issue had been tendered by the pleading in the case, when in fact the pleading tendered no such issue. He can't, therefore, claim there was error in submitting such issue to the jury; the court would err if it failed to submit the issue to the jury. [Chouquette v. Southern Elec. Ry. Co., 152 Mo. l. c. 263-264; Fisher Real Estate Co. v. Realty Co., 159 Mo. l. c. 567.] Parties to litigation necessarily are held bound to positions they assume therein. [Green v. City of Saint Louis, 106 Mo. 454, l. c. 458.] We see no reason why this rule should not be applied to the State in a criminal proceeding.

We, therefore, are of the opinion that the court erred in refusing to instruct the jury on the question of defendant's character. Other errors are assigned, which we deem it unnecessary to consider because like circumstances probably will not occur in another trial.

The judgment is reversed and the cause remanded.
*Railey* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.