The State v. Luther Nibarger, Appellant.—98 'S. W. (2d) 625.

Division Two, November 17, 1936.*

Scott J. Miller for appellant.

*NOTE: Opinion filed at May Term, 1936, June 30, 1936; motion for rehearing filed; motion overruled August 20, 1936; motion to transfer to Court en Banc filed; motion overruled at September Term, November 17, 1936.

938

*Roy McKittrick,* Attorney General, *William W. Barnes* and *Wm. Orr Sawyers,* Assistant Attorneys General, and *Aubrey R. Hammett, Jr.,* Special Counsel, for respondent.

WESTHUES, C.—Appellant was tried upon a charge of burglary and larceny. A jury acquitted him of the burglary but found him

guilty of grand larceny and assessed a punishment of two years' imprisonment in the penitentiary. Being unsuccessful in obtaining a new trial he appealed.

The information charged the crime to have been committed on the 29th day of October, 1933, in Grundy County, Missouri. The evidence in support of the charge was substantially as follows: William H. Williams lived on a farm in Grundy County, about seven miles north of Trenton. Two sets of harness, valued at forty dollars, stored in a barn on the Williams farm, were stolen on the night of October 29, 1933. Entrance to the barn was gained by cutting a hole in the door so that the latch could be lifted and the door opened. About December 8, following, Williams was advised by a neighbor that if he would go to Chillicothe on a certain day he could find his harness upon a team of appellant. Acting upon this advice Williams went to Chillicothe and located a part of his harness on appellant's team. Upon inquiry as to where appellant had obtained the harness he immediately replied that a man named Clingensmith had given it to him in trade for a calf. When asked where the other part was appellant replied that it was home in his barn. The harness was found there and Williams recovered the one set. The other set was not found. Appellant was asked at the time why he did not have the complete set on the team and he replied that Clingensmith had told him: "You are a poor man, you put them harness all on together on your horses, somebody will think they were stolen harness." Clingensmith and appellant were arrested and charged with burglary and larceny. The charge against Clingensmith was dismissed by the prosecuting attorney the day before the trial of appellant. Clingensmith testified for the State. His evidence in substance was that about midnight on October 29, he received a telephone call asking him to come to a certain point on a road about five miles out in the country; that when he reached the place he found one Nannce Dixon, appellant and appellant's father, Albert Nibarger, in a disabled model T Ford. He also testified that at their request he used his car and pulled the disabled car to the home of appellant; that there were four filled sacks in the car, two of which were left at appellant's home; that he took the other two sacks and Albert Nibarger to the Albert Nibarger home in his car and when the sacks were taken from the car he heard the rattling of chains. Clingensmith further testified that on the Sunday following, while in a poker game with appellant, appellant informed him that the sacks the witness had hauled on the night of October 29, had contained harness which had been obtained over about Hickory Creek from a man named Williams.

Appellant denied the crime and testified that he was at home on the night of October 29. On direct examination he was not asked,

and therefore not cross-examined, with reference to his dealings with Clingensmith, nor did he testify from whom he had obtained the harness. Neither did he deny having made the statements he is alleged to have made, as testified to by the State's witnesses.

A number of witnesses testified in support of the alibi. These witnesses testified that they were at the home of appellant all night on October 29, and that appellant did not leave the premises. Two other witnesses testified for appellant that they saw Clingensmith at the home of appellant and heard talk of trading harness for a calf. One of these witnesses stated that he saw Clingensmith deliver the harness to appellant a few days after October 29. Clingensmith's reputation for truth and veracity was impeached. He also admitted, while on the stand, that he had been convicted of crime.

Appellant made numerous assignments of error in his motion for new trial, many of which were briefed. Most of these pertain to the sufficiency of the evidence to sustain a conviction. In the brief we find the statement that there was no evidence that appellant was present at the time and place where the larceny was committed; that this was necessary to a conviction, citing State v. Duncan, 330 Mo. 656, 50 S. W. (2d) 1021, l. c. 1023, and other cases. The evidence in this case was more substantial than in the Duncan case. In the Duncan case possession of the stolen property, six weeks after it had been taken, was all the testimony against the defendants. An explanation was made of its possession. The defendants lived more than twenty-five miles from the place where the property was stolen. No evidence was introduced showing that they had ever been in the neighborhood. Those facts of course were quite different from the facts in this case. Here we have evidence that appellant was on the public road, even though a number of miles from the scene of the crime, on the night the theft occurred, in possession of property, which he later stated was harness he had obtained from a man by the name of Williams. We also have his statement, when asked why he mixed the harness with other harness, that he did it because he was advised that people would think he had stolen harness if he put the full set on his horses. This, of course, indicated guilty knowledge. Upon the witness stand he failed to deny the alleged incriminating statements attributed to him. He made no explanation of his possession of the harness. It is, therefore, apparent that the evidence in this case is sufficient to support a verdict. In the Duncan case all of the evidence introduced by the State could have been true and yet the defendants could have been innocent. Such is not the case here. •

Appellant has invoked the rule that evidence thoroughly impeached is no evidence at all. It is argued that Clingensmith was so thoroughly impeached that this court should not take his evidence into consideration when passing upon the sufficiency of the evidence. [State v.

Packwood, 26 Mo. 340; State v. Primm, 11 S. W. 732, 98 Mo. 368, l. c. 373; State v. Huff, 161 Mo. 459, l. c. 487, and State v. Fitzsimmons, 338 Mo. 230, 89 S. W. (2d) 670, l. c. 672.] In the Fitzsimmons case we held that the rule was not applicable to the facts there in evidence. The principle announced in the other cases cited was applied in a more recent case, that of State v. Liston, 315 Mo. 1305, 292 S. W. 45. This court said: "De Hart's evidence bears all the earmarks of fiction and of having been inspired by malice." Also, "Leaving De Hart's evidence out of consideration, there is not a circumstance in the case that is not consistent with the theory of Liston's innocence of the charge." De Hart had served terms in penitentiaries in four different states. He testified that he was getting even with Liston. Liston, while on the witness stand, testified to every detail as to his dealings with De Hart, thereby subjecting himself to cross-examination and impeachment upon every phase of the case. The State was unable to impeach him. Had Liston been found in possession of the stolen property in that case, and had he left undenied incriminating statements alleged to have been made, and contented himself by simply denying the crime, this court would not have reversed the judgment of conviction. In the case before us, if we leave Clingensmith's evidence out of the case, facts and circumstances remain which tend to show the guilt of appellant. We are, therefore, constrained to hold that the rule in the Liston case and other similar cases cannot be applied to this case.

Appellant insists that the trial court committed error in failing to instruct on good character. Appellant cited the case of State v. Baird, 288 Mo. 62, 231 S. W. 625, l. c. 627, as applicable to this case. In that case the court said:

"Further, having deliberately attacked the character of the defendant, treating the matter as being in issue, having made the attack with the expectation of proving a bad character, and having produced evidence tending to show the contrary, the State is not in position to say that the issue was not before the jury. 'Whenever necessary,' as used in the statute, is not limited to cases where the defendant himself has offered evidence of his good character, but it must include any case where his character is put in issue *and there is sufficient evidence to warrant a finding by the jury that his character is good.*" (Italics ours.)

We have searched the record in this case in vain for any evidence of the good character of appellant. The prosecuting attorney asked one of appellant's witnesses if he was acquainted with the character of appellant, and the witness answered in the negative. The State offered two witnesses who testified that they were acquainted with the moral character of appellant and stated that it was bad. Appellant did not complain of this evidence. It is not mentioned in the

motion for new trial. We call attention to the case of State v. Williams, 87 S. W. (2d) 175, 337 Mo. 884, announcing the rule that a witness's reputation for truth and veracity cannot be impeached by showing that his reputation for morality is bad. The character of appellant was not an issue and no evidence was introduced by the State, or the appellant, that his reputation was good. Therefore, there was no evidence upon which to base an instruction on good character and the ruling in the Baird case, supra, is not applicable.

█ The motion for new trial contained a number of assignments of error pertaining to the instructions given by the court and those refused. We find the instructions given to cover all the issues presented at the trial and in proper form. That is probably the reason appellant failed to brief these points. We find one exception, however, and desire to call attention to Instruction No. 9, given by the court. It was an instruction concerning voluntary statements alleged to have been made by appellant. In the motion for new trial appellant stated that the instruction was right in form, under the law of this State, but that there were no facts upon which to base it. There was ample evidence upon which to base the instruction, as our statement of facts will disclose. We call attention to the cases of State v. Duncan, 336 Mo. 600, 80 S. W. (2d) 147, l. c. 153, 154 (15), and the case of State v. Johnson, 333 Mo. 1008, 63 S. W. (2d) 1000, l. c. 1005 (4, 5), by the court en banc. These cases hold such instructions erroneous as invading the province of the jury. Under the ruling in the Duncan and Johnson cases instructions should no longer be given concerning voluntary statements made by a defendant.

█ Appellant in his motion assigned as error the refusal of the court to give appellant's requested instruction to the effect, "that mere naked possession of stolen goods is no evidence that the defendant was guilty of grand larceny." In a case of this nature a defendant is not entitled to such an instruction. It is true this court has ruled it to be error to instruct that the possession of property recently stolen, unless satisfactorily explained, raises a presumption of guilt. Evidence of such possession, however, is proper against a defendant and is a circumstance for the consideration of the jury. [State v. Swarens, 241 S. W. 934, 294 Mo. 139.] A reading of that case will disclose the court simply held it to be error for the trial court in its instruction to comment upon such a fact. Note what was said by one of the judges. [See 294 Mo. 139, 241 S. W. l. c. 940.] ". . . The trial court should not give any instruction whatever in relation to the conclusions or inferences which may be drawn by the jury from the fact of possession of recently stolen property."

Finding no reversible error in the record of which appellant has complained, the judgment must be affirmed. It is so ordered. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.