**STATE of Missouri, Respondent,**

v.

**Rufficius LORA, Appellant.**

**No. 45939.**

Supreme Court of Missouri,
Division No. 1.

Oct. 14, 1957.

No brief filed for appellant.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Asst. Atty. Gen., for respondent.

WESTHUES, Judge.

Rufficius Lora was convicted in the Jackson County Circuit Court of robbery in the first degree · and sentenced to serve five years' imprisonment in the state penitentiary. An appeal was taken to this court.

Defendant did not file a brief in this court so we shall consider assignments of error in the motion for new trial filed in the circuit court. In a number of the assignments, defendant complains of the admission of evidence offered by the State and the rejection of evidence offered by the defendant.

The evidence of the State tends to prove the following: The prosecuting witness, Mrs. Tressie Banks, operated a beauty salon at 1836 Vine Street in Kansas City, Missouri. On March 16, 1956, at about 4:15 o'clock in the afternoon, the defendant and a boy called "Marvin" entered the beauty salon and about the same time, George Medellin, who had been doing some work for Mrs. Banks after school hours, also entered her place of business. It was in evidence that Medellin was a nephew of the defendant. Mrs. Banks testified that she did not know the defendant at the time of the alleged offense but at the trial, she identified him as the man who had on March 16 taken her purse by force; that the de-

fendant picked up a butcher knife in her kitchen and that she struggled with him; that she finally succeeded in pushing him out the front door; that during the struggle, defendant reached into her pocket and took therefrom a coin purse containing some money. A statement taken by the police department from the defendant was introduced in evidence. This statement contained admissions by the defendant to the effect that he and a boy had committed the robbery. The defendant testified that he did not commit the robbery and that he had signed the statement after he had been punished and subjected to long periods of questioning; that he could not read and did not know the contents of the statement he signed. The police officers denied that defendant was mistreated in any way. It is evident that the State's evidence was sufficient to support a verdict of guilty.

We note, before reviewing the evidence of the defendant and the assignments of error, that it appears from the record that the defendant is a person of very low mentality and, as will later appear, he offered to introduce evidence that he had been committed to a mental institution at Marshall.

One of the assignments of error concerns the cross-examination of George Medellin who testified that on the afternoon of the alleged robbery, he arrived at Mrs. Banks' place of business about 3:30 p. m.; that he remained there about a half hour and as he was leaving, a man and a boy entered the salon; that the defendant was not one of them. On cross-examination, the following occurred:

"Q. Where do you live, George? A. 1320 Forest.

"Q. Who do you live there with? A. My mother.

"Q. What is her name? A. Cecelia Brown.

"Q. Do you have any brothers and sisters? A. Yes, sir.

"Q. How many? A. Three sisters and four brothers.

"Q. Some of them are named Medellin? A. Yes.

"Q. How many brothers and sisters have the name of Medellin, the same as you do? A. Three.

"Q. There are four of them named Brown? A. Yes.

"Q. Brown doesn't live there any more, does he? A. No.

"Q. After Brown left who lived there? A. My mother, my brothers and my sisters.

"Q. A fellow named Thompson lived there with you? A. Thompson?

"Q. Thompson. A. Thomas, that is my uncle.

"Q. What is your mother's youngest child's name? A. Denise.

"Q. Denise what? A. Denise Brown.

"Q. Brown wasn't living there and hadn't been for over a year when that baby was born. A. I don't remember about that.

"Mr. McFadden: If your Honor please, I think that is immaterial.

"The Court: It certainly is but it is cross examination.

"Q. (By Mr. Kennett) Were you at home the night Burt Brown came to your house there? A. No, I wasn't there.

"Q. And got cut up there? A. I wasn't there.

"Q. You know if your mother was ever married to Brown? A. No.

"Mr. McFadden: I object to the question as immaterial, having no bearing on the issues of this case.

"The Court: Cross examination. It goes to the credibility of the witness.

"Q. (By Mr. Kennett) You know whether your mother was married to Burt Brown? A. Yes, she is.

"Q. Was she ever married to Thompson? A. That is my uncle, she can't be married to my uncle.

"Q. Was she ever married to this fellow that cut up Burt Brown at your house out there that night?

"Mr. McFadden: I object to that, it is immaterial, has no bearing on the credibility of this witness as to what his mother might be doing or some uncle or somebody else.

"The Court: Go ahead."

■ The questions asked concerning the mother of the witness were highly improper. If the court had sustained the first objection made to this line of examination and the subject matter had not been pursued further, we could rule that the objection came too late. However, the trial court overruled the objection and finally commented that "It goes to the credibility of the witness." That ruling was erroneous and prejudicial to the rights of the defendant. Medellin was an important witness for the defendant. He testified that the defendant was not the man who entered the beauty salon.

■ The credibility of a witness for truthfulness may not be impeached by showing that his general moral character is bad. 70 C.J. 842, Sec. 1049. Such is now the rule in this state. State v. Williams, 337 Mo. 884, 87 S.W.2d 175, loc. cit. 180–184(9), 100 A.L.R. 1503; State v. Nibarger, 339 Mo. 937, 98 S.W.2d 625, loc. cit. 627 (2, 3). If that be the rule, and we find it to be so, then it follows that the reputation of a relative of the witness may not be shown to impeach the credibility of the witness.

■ The defendant offered to prove that by an order of the juvenile court he had been committed to a school for feeble-minded children. James Reefer, Chief Probation Officer of the Juvenile Court, was called as a witness and the following occurred:

"Q. You have a file on Rufficius Lora that you brought here today at my request and under subpoena? A. Yes.

"Q. I would like to ask you if back about a year and a half or two years ago Rufficius under an order of the Juvenile Court was committed down at Marshall, Missouri, to the school for feeble-minded children? A. Could I make a statement before answering that question?

"Mr. Kennett: I object to that as being no defense. Insanity or incompetence put in here has nothing to do with the guilt or innocence of the defendant.

"The Court: It is the record of the Juvenile Court. The objection will be sustained."

■■ The State seeks to justify the rejection of this evidence on a theory thus stated: "The defendant did not rest his case upon the theory that he was mentally incompetent. To have done this, he would have had to be in the position of admitting that he had committed the crime as charged, but should have been acquitted on the ground that he was not responsible for his actions. As we have pointed out above, the entire theory of his case was that he did not commit the actions charged." Insanity and alibi are not inconsistent defenses. Proof of one does not disprove the other. A defendant in a criminal case may rely on both and show that he was not at the place where the crime was committed and also introduce evidence to prove that he has not sufficient mental capacity to be responsible for the offense charged. 22 C.J.S. Criminal Law §§ 54, 55, pp. 118, 119; People v. Doody, 343 Ill. 194, 175 N.E. 436, loc. cit. 445(24–28); State v. Wright, 352 Mo. 66, 175 S.W.2d 866, loc. cit. 872(8); Peo-

ple v. Conte, 17 Cal.App. 771, 122 P. 450, loc. cit. 455, 456.

The authorities cited above hold that a defendant may rely on inconsistent defenses. We are not dealing with that question in this case. But, certainly, if a defendant may rely on inconsistent defenses he should be allowed to rely on defenses that are not inconsistent.

■ A juvenile court commitment ordering a person to be confined in an institution for the feeble-minded is competent evidence in support of a claim of mental incapacity. People v. Varecha, 353 Ill. 52, 186 N.E. 607, loc. cit. 610(7, 8). The trial court erred in rejecting the offer of proof.

■ The conviction of the defendant must be set aside and a new trial granted. That renders unnecessary a consideration of a number of the assignments of error. However, we call attention to several rulings of the trial court on matters that may be presented on retrial of this case. It was in evidence that the defendant was known as "Pookie." Mrs. Banks was not acquainted with the defendant. Defendant claimed mistaken identity. Mrs. Banks was permitted to testify that shortly after the robbery occurred, a man asked her, " 'Mrs. Banks, what has Pookie done to you?' " Mrs. Banks testified that she knew the man who asked her this question. He was not called as a witness. The evidence of what the man said to Mrs. Banks was hearsay and should not have been admitted. The State in its brief claims that the evidence was admissible under the res gestae rule. A recitation of what occurred when the evidence was offered will demonstrate the fallacy of the State's contention. Note what occurred after the court had overruled defendant's objection to the evidence on the ground that it was hearsay:

"Q. (By Mr. Kennett) How long had the defendant been gone when this man came in your door? A. He had just run out the door when the man came in from the street, pushed my door open and came in.

"Q. Did the man indicate to you he knew the man that had just run out of your place?

"Mr. McFadden: I object to what any man indicated to her, it would be hearsay.

"The Court: Overruled.

"A. He inquired, the man inquired of me—these were his words 'Mrs. Banks, what has Pookie done to you?' "

For an interesting discussion of the res gestae rule, see Meyers v. Smith, Mo., 300 S.W.2d 474.

■ After the alleged robbery had occurred, a police officer made a report which contained a description of the alleged guilty person as given by Mrs. Banks as a "colored male, age 17, height 5 feet, 6; weight 180, black hair, brown eyes." Defendant at the time he was placed in jail, which was on the night of the alleged robbery, was, according to the sheriff's office, 5 feet, 2 inches tall and weighed 131 lbs. The defendant offered this report in evidence and asked the court for permission to read to the jury only that portion which pertained to the description of the defendant. This was on the theory of mistaken identity. The trial court, over defendant's objection, permitted the State to read all of the report which contained damaging statements as given by Mrs. Banks. The trial court ruled that defendant had offered the exhibit and therefore all of it should be read to the jury. Defendant insisted at the time that he wanted only a portion of the report read which tended to impeach the evidence of Mrs. Banks as to the description of the person who had allegedly robbed her in her beauty salon.

Without deciding whether the trial judge or the defendant was correct in the manner in which the exhibit was offered, we rule that on retrial, if defendant so desires,

he should be permitted to introduce only that portion of the contents of the exhibit which tended to contradict the witness, Mrs. Banks.

For the errors indicated, the judgment of the trial court is reversed and the case remanded for retrial. It is so ordered.

All concur.