64 N.J. Super. 191 (1960)
165 A.2d 537
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRANK ABBOTT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 31, 1960.
Decided November 21, 1960.
*194 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Charles Handler argued the cause for defendant-appellant (Mr. Joel F. Handler, on the brief).
Mr. Martin L. Greenberg, Assistant Prosecutor, argued the cause for plaintiff-respondent (Mr. Brendan T. Byrne, Essex County Prosecutor, attorney; Mr. John F. Crane, First Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
Defendant was charged in three separate indictments with the crime of atrocious assault and battery, N.J.S. 2A:90-1, allegedly committed upon Nicholas *195 Scarano, Michael Scarano and Mary Scarano. He appeals a jury determination of guilty in the Essex County Court on indictment No. 1658, involving the alleged assault upon Nicholas Scarano.
The incident upon which the indictments were based occurred on July 15, 1957. Defendant Abbott resided at 19 Claremont Avenue, in Montclair. His next-door neighbors, with whom he shared a common driveway, were the Scaranos  Michael and Mary. On the day in question, Philip Pignatello, a relative of the Scaranos, was engaged in paving the Scaranos' half of the joint driveway. In the early afternoon Abbott approached Pignatello and asked if he could have some left-over asphalt. He explained to Michael Scarano that he wanted to construct a stopper between the two garages in order to prevent his door from swinging onto the Scarano property. Defendant was given the asphalt and commenced the erection of a stopper, in the form of a curb, about four inches high and eight to ten feet long.
While Abbott was in the process of laying out the asphalt, Nicholas Scarano, 36-year-old son of Michael and Mary, arrived on the scene. Nicholas objected to the erection of the doorstop, and an argument ensued between him and defendant. The testimony is conflicting as to who hit the other first, but the heated words soon developed into blows and Nicholas was knocked to the ground.
The ensuing scuffle took place either in the joint driveway or on Abbott's property; it is clear that the scene of battle gradually progressed in the direction of defendant's garage. While Nicholas was still on the ground, his father approached Abbott, holding an ax which had been used by Pignatello earlier in the day and which the elder Scarano was returning to his basement when the fight began. Michael Scarano apparently was either attempting to strike defendant with the handle of the ax or trying to protect his son from the defendant. The State's witnesses testified that at this point Abbott pulled the ax from Michael's hand and chopped at *196 Nicholas, who had risen to his feet, hitting him on the head and knocking him down again. Having disposed of the son, he proceeded to flail the father, striking the latter's head four times with the ax.
Mary Scarano had previously rushed out of the house and she joined in the effort to wrest the ax from defendant. She was hit on the head and the side of the face.
Defendant testified that Nicholas had started the brawl, and denied that he, Abbott, had intentionally struck any of the Scaranos with the ax. He also said that he fought with Mrs. Scarano only because she attacked him with a kitchen knife. He said that at one point he and the Scaranos were all scuffling for possession of the ax. His primary contention was that he acted entirely in self-defense; the implication was that the injuries of the Scaranos were accidental.
The major error assigned on this appeal is in the trial court's instruction on defendant's duty to retreat. With respect to the elements of self-defense, the trial judge instructed the jury as follows:
"If you find the charges involved or either of them happened on the joint or common driveway and that the defendant had an available opportunity to retreat and you also find that he was or appeared to be threatened by assault and battery with imminent danger of life or serious bodily harm, again there is no duty to retreat. On the other hand, under the latter circumstances, if you find that he did not appear to be threatened by assault and battery with imminent danger of life or great bodily harm, he had a duty to retreat and if he failed to retreat the defense of self-defense would not avail him and would not constitute a defense to these charges * * *." (Emphasis added)
Preliminarily, we take note of defendant's failure to raise timely objection to the alleged erroneous portion of the trial judge's charge. Defendant merely objected to the refusal of the judge to charge certain of his requests, one of which included language from State v. Goldberg, 12 N.J. Super. 293 (App. Div. 1951)  but not language submitted in another request to charge, now alleged to constitute a correct charge on the subject of duty to retreat.
*197 Our rules unequivocally provide that in a criminal proceeding error may not be urged as to any portion of the court's charge unless objection thereto is made before the jury retires to consider its verdict. R.R. 3:7-7(b); R.R. 1:5-1(a), made applicable by R.R. 2:5. We may, of course, notice "plain errors affecting substantial rights of the defendant," even though they were not brought to the trial court's attention. R.R. 1:5-1(a); R.R. 2:5. However, since we do not find error in the instruction in question, we need not consider the repercussions of defendant's failure to contest the charge. See State v. Perrella, 21 N.J. Super. 550, 554 (App. Div. 1952); State v. Baechlor, 52 N.J. Super. 378, 394 (App. Div. 1958).
Defendant objects to the italicized portion of the charge as an incorrect statement of our law, as expounded in State v. Goldberg, supra. In Goldberg a son was indicted for simple assault and battery upon his father. In reversing the conviction, the court deemed it error to conclude, as the trial judge had done, that defendant  upon being approached by his father with a light wooden reel  had an unqualified duty to retreat. Judge Jayne there said:
"* * * we proceed no further than to state that in our opinion where one is not, or does not reasonably appear to be, assailed or threatened with imminent danger to life or great bodily injury, his acceptance of an available opportunity to retreat is not in the law of this State a positive duty. The opportunity to retreat is, however, in such cases a factual element to be considered together with all the other accompanying and surrounding circumstances in determining whether the person thus assailed used only such resistance as in all the relevant circumstances was necessary, or reasonably appeared to be necessary, for self-protection." (12 N.J. Super., at p. 307)
The broad language in Goldberg was subsequently qualified by an opinion upholding, in a prosecution for assault with intent to kill, a jury charge which read: "If the injury apprehended could be otherwise avoided, the accused was bound to avoid the danger without resorting to violence." State v. Centalonza, 18 N.J. Super. 154, 159 (App. Div. *198 1952). In Centalonza, at p. 161, the court rejected defendant's reliance on Goldberg as support for his argument that he was not under a positive duty to retreat, pointing out that Goldberg "deals only with a simple assault and battery, where no weapon was employed by the defendant."
Defendant characterizes the instant situation as falling between Goldberg and Centalonza, but closer to Goldberg. He urges that if he was not under a duty to retreat when he was first engaged in fisticuffs with Nicholas, he should not, in the heat of the battle, be saddled with the burden of receding just because an ax was introduced into the fight. Defendant argues that the duty to retreat is not a condition precedent to the exercise of the privilege of self-defense in cases of simple assault and that the fracas here began as a simple assault.
The error in defendant's reasoning lies in his lack of reference to the nature of the crime for which he was indicted and convicted  atrocious assault and battery. N.J.S. 2A:90-1. In its 1951 revision of Title 2 of our Revised Statutes, the Legislature clearly classified the various degrees of assault and battery, providing gradations unknown at the common law. See State v. Maier, 13 N.J. 235 (1953). Atrocious assault and battery, N.J.S. 2A:90-1, was labeled a high misdemeanor, carrying a penalty up to $2,000 fine or imprisonment for not more than seven years, or both. N.J.S. 2A:85-6. Simple assault and battery, while preserved in its common law form, N.J.S. 2A:85-1, was downgraded to the level of disorderly conduct offenses, N.J.S. 2A:170-26, triable solely in the municipal courts and punishable by fine of not more than $1,000, or imprisonment up to a year, or both. N.J.S. 2A:169-4. See State v. Cybulski, 31 N.J. Super. 164 (App. Div. 1954).
In regard to the issue at hand, the distinction between simple and aggravated assault and battery is more than one of degree. As may be inferred from the holding in Goldberg, the question of duty to retreat is inextricably bound up with the issue of reasonable retaliation  i.e., self-defense. *199 Rather than a condition precedent to the invoking of the defense of self-defense, exercise of a reasonable opportunity to withdraw is itself an element of the defense; it is a factor to be considered in determining whether the defendant's act was truly "defensive" in nature. In Goldberg the court stated that one might under certain circumstances defend without taking advantage of an opportunity to retreat, provided the defense involved no more than a simple assault upon the assailant. In Centalonza, it was noted that an attack of such force and with such vicious intent as to constitute a violation of N.J.S. 2A:90-2 could not conceivably be justified as "defensive" if an available opportunity to back away and avoid commission of the crime was ignored by defendant.
We perceive little pertinent distinction between assault with intent to kill, N.J.S. 2A:90-2, and atrocious assault, N.J.S. 2A:90-1. True, the penalty for the former may be greater, consisting of up to 12 years of imprisonment, $3,000 in fines, or both. But aside from the element of felonious intent, the viciousness and the savagery of the offenses  especially where a weapon or other dangerous instrument is used  are sufficiently similar, and sufficiently serious, to warrant application of a positive duty to retreat, as an indispensable element of a defendant's contention that his aggravated assault was perpetrated in self-defense. The essential consideration is that one assailed by another may not inflict death or serious injury upon the assailant if he can, with reasonable safety to himself, avoid that course by retreat.
Our discussion is focused, of course, on those situations in which the defendant does not reasonably appear to be threatened with injury to life or great bodily harm, compare State v. Mark Len, 108 N.J.L. 439 (Sup. Ct. 1932); the trial judge concededly placed this qualification on the charge which defendant now contests. In the absence of such dire threats to the defendant's life or health, it is soundly established that the opportunity to withdraw must *200 be availed of, at least if a defensive attack more serious than a simple battery is sought to be justified on the grounds of self-defense. State v. Brackey, 175 Iowa 599, 157 N.W. 198 (Sup. Ct. 1916) (assault with intent to commit great bodily injury); cf. Thompson v. Gilliland, 208 Ala. 294, 94 So. 53 (Sup. Ct. 1922) (assault with intent to kill). 6 C.J.S. Assault and Battery § 92, p. 945; 4 Am. Jur., Assault and Battery, § 47, p. 151. Also see Prosser, Torts (2d ed. 1955), § 19, p. 90; 1 Harper & James, Torts, § 3.11, pp. 242-43 (1956). Restatement, Torts, § 65(3) (a), and especially comment (g). However, the application of a duty to retreat is always relative to the extremity of the defensive measures employed. For example, before a homicide in self-defense is justified, the defendant must be shown to have first exhausted all reasonably safe means to avoid it, including retreat if possible with reasonable safety. State v. di Maria, 88 N.J.L. 416 (Sup. Ct. 1916), affirmed 90 N.J.L. 341 (E. & A. 1917); cf. State v. Hipplewith, 33 N.J. 300, 316 (1960).
We find totally unpersuasive defendant's contention that the duty to retreat should never be interposed mid-way through an altercation, and that "once it is established that defendant has the right to stand his ground," he should not thereafter be required to withdraw as soon as he acquires his opponent's weapon. Defendant overlooks what he did with the Scaranos' ax, once having acquired it. His contention is inimical to the very purpose behind imposition of the duty to retreat  to avoid contact which may result in serious bodily harm or the taking of life. This purpose is especially evident in the steadfast requirement of "retreat to the wall" in homicide cases. See State v. di Maria, supra.
The logical weakness in attempting to justify failure to retreat by reference to an earlier scene in the development of the fracas is manifest. The doctrine of retreat is designed to prevent the expansion of ordinary horseplay, simple jousting, or momentary loss of temper into a deadly physical struggle. That the line has been drawn at simple assault *201 is a concession to our ethical abhorrence of cowardice, State v. Goldberg, supra, 12 N.J. Super., at p. 299, and it should not be extended.
Defendant next asserts prejudicial error in the trial judge's ruling on a question concerning his physical condition at the time of the alleged attack. Defendant testified on direct examination that he currently weighed 200 pounds, and had weighed about 135 to 140 pounds at the time of the incident, July 15, 1957. He was then asked, "Why was your weight so low at that time?" Objection was made, sustained, defendant's attorney announced, "Cross-examine," and the trial proceeded.
Evidence of a defendant's physical condition is admittedly relevant to his claim of self-defense. See 4 Am. Jur., supra, § 103, p. 181. But, as with his initial substantive contention, defendant is here faced with a failure to assert his rights at trial. We are directed by R.R. 1:5-1 (a), made applicable by R.R. 2:5, to reverse for error in the exclusion of evidence only if: (1) specific objection thereto was made; and (2) in the light of the entire record, the exclusion caused defendant "manifest wrong or injury."
We are of the opinion that neither of these conditions was met in the instant case. Specific objection was not made by defendant's counsel; upon the court's approval of the State's objection, he proceeded to sit down. He did not attempt to state to the trial judge the purpose behind his question, which he was under a duty to do where, as here, the purpose may have been unclear from the question itself. Manhattan Overseas Co. v. Camden County Beverage Co., 125 N.J.L. 239, 245 (Sup. Ct. 1940), affirmed 126 N.J.L. 421 (E. & A. 1941). In any event, we do not find "manifest wrong or injury" requiring reversal. The jurors were made aware of defendant's weight at the time of the incident, and were free to assess his ability to defend himself in the light of this knowledge and their observation of him. It is just not so, as defendant asserts, that "the jury viewed the situation *202 of the person using the privilege of self-defense from the point of view of a healthy 200-pound man."
Objection is here made, for the first time, to the following comment by the trial judge, on the ground that it is unsupported by the evidence:
"With reference to this defense [self-defense], I will define it to you shortly. He [Abbott] also contends that this act of his, which he doesn't seem to deny, at least any express denial of it, was accidental and not intentional."
The act referred to was the alleged swinging of the ax by Abbott. The trial judge's comment appears to be consistent with the evidence produced. Defendant did not expressly deny striking the Scaranos, but clearly implied in his testimony, as the judge stated, that any blows were accidental, resulting from the scramble for possession of the weapon.
Moreover, failure to call the court's attention to the alleged error in the charge is, unless "plain error," inexcusable, State v. Lovell, 88 N.J.L. 353 (E. & A. 1915), especially where the jurors have been repeatedly told that the court's view of the evidence is not binding on them. See State v. Linarducci, 122 N.J.L. 137, 143 (Sup. Ct. 1939); Annotation, 95 A.L.R. 785 (1935). We could not conceivably deduce "plain error" from the trial judge's comment. The two sentences immediately following the questioned charge were: "You have heard the testimony on that. You are the sole judges of these facts." Later in his instruction, the trial judge said:
"If either counsel during the trial of the case or in their summation have referred to any statement of facts, or even the Court has so referred, which do not coincide with your recollection of the facts, you are to disregard them and rely solely and exclusively upon your recollection of the facts."
Defendant also urges that the State is equitably estopped to prosecute him. He points out that prior to the instant prosecution, Michael Scarano was indicted for assault *203 with intent to kill, N.J.S. 2A:90-2, arising out of this same incident. At the Scarano trial the State took the position, bolstered by Abbott's testimony, that the Scaranos had started the fight, that they had struck Abbott with the hatchet, and that Abbott had not struck the Scaranos. The trial resulted in an acquittal. Defendant now claims that the State cannot reverse its field and move against him, using the Scaranos as witnesses.
The evidence, however, indicates that the State never changed its direction, as alleged. Compare State v. Baird, 288 Mo. 62, 231 S.W. 625, 15 A.L.R. 1035 (Sup. Ct. 1921). In the exercise of his public duty to "use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the law," N.J.S. 2A:158-5, the prosecutor sought and obtained indictments against both Abbott and Scarano, believing quite logically that both had committed violations. The State then moved for the trial of both indictments together, but a severance was granted on the motion of Scarano. Thus, defendant cannot claim surprise or prejudice, nor can he seriously maintain that he was duped into forfeiting his privilege against self-incrimination by his open and free testimony at the Scarano trial. Moreover, the application of estoppel against the State is particularly inappropriate in areas such as criminal prosecution, where the welfare and safety of the community are the paramount considerations. Cf. Thornton v. Village of Ridgewood, 17 N.J. 499, 511 (1955); Universal Holding Co. v. North Bergen Twp., 55 N.J. Super. 103, 111 (App. Div. 1959). See Annotation, 1 A.L.R.2d 338, 340 (1948); 31 C.J.S., Estoppel, § 140(c), p. 413; 19 Am. Jur., Estoppel, § 166, p. 818.
Affirmed.