THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* OSVALDO PÉREZ MARTÍNEZ, Defendant and Appellant.

No. 16624. Decided December 18, 1961.

*Práxedes Alvarez Leandri* and *Roberto Davis Vázquez* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Arturo Estrella, Deputy Solicitor General,* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Santana Becerra and Mr. Justice Rigau.

Mr. Justice Pérez Pimentel delivered the opinion of the Court.

Osvaldo Pérez Martínez was charged jointly with other Nationalists with the crime of murder in the first degree, perpetrated on October 30, 1950 in Ponce, on the person of Aurelio Miranda, a corporal of the police of Puerto Rico. A jury found him guilty of murder in the second degree. On appeal, we reversed the judgment and ordered a new trial.[1] The trial was held before another jury and the case was prosecuted under the original information for the crime of murder in the first degree. The jury brought a verdict of guilty of murder in the second degree. Having been sentenced, he took the present appeal assigning the commission of several errors, the first of which reads as follows:

"The Superior Court of Puerto Rico, Ponce Part, committed gross error in prosecuting the defendant-appellant for the second time for the crime of murder in the first degree, having been previously convicted of and sentenced for the crime of murder in the second degree, for the same facts, which judgment was reversed by this Court in criminal case No. 15,845."

In the petition for habeas corpus No. 773, *José Velázquez Álvarez* v. *Gerardo Delgado*, decided by this Court on June 25, 1958, we applied the doctrine in the case of *Green* v. *United States*, 355 U.S. 184, 2 L. Ed. 2d 199.[2] We held that where an accused of murder in the first degree is convicted of murder in the second degree and afterwards, at his request, the verdict is set aside and a new trial ordered, the

---

[1] An erroneous instruction on the defense of alibi given to the jury served as basis for reversal of the judgment.

[2] In the *Green* case it was held, in substance, that the verdict of murder in the second degree was an implicit acquittal of the crime of murder in the first degree for which he was prosecuted; that the jury had an opportunity to find him guilty of murder in the first degree, but did not do so and, upon the jury being discharged without his consent, Green was protected by the constitutional clause on former jeopardy as respects the crime of murder in the first degree.

accused can not be convicted of the original crime of murder in the first degree, and that a conviction for this crime at the new trial violates the principle of former jeopardy. Consequently, we set aside the sentence imposed to Velázquez Álvarez for the crime of murder in the first degree and ordered that the case be prosecuted for murder in the second degree.[3]

In the *Green* case as well as in *Velázquez Álvarez* the verdict brought in the second trial found the defendants guilty of the greater crime, that is, murder in the first degree, when another jury had previously acquitted them expressly of that crime by finding them guilty of the crime of murder in the second degree, which is of a lesser degree, or where by virtue of the dismissal of the jury which brought such verdict, without defendants' consent and without the concurrence of other extraordinary circumstances, they had been protected by the constitutional guarantee against former jeopardy.

In the instant case, however, the verdict brought at the first trial as well as at the second trial was the same: guilty of murder in the second degree. The first verdict having been set aside at defendant's request, it does not constitute former jeopardy. The defendant could be legally punished at the second trial for the crime of murder in the second degree, without violating his constitutional right or not to be twice put in jeopardy for the same offense. See the case of Green, *supra*, and the extensive annotation in 61 A.L.R.2d 1141.

The appellant complains, however, that the error committed by the superior court in prosecuting him for the second time for a crime of murder in the first degree was prejudicial to him. We disagree. On previous occasions we

[3] In deciding the case of Velázquez Álvarez, we overruled the previous authorities holding otherwise. *People* v. *Carbonell*, 36 P.R.R. 474, 684; 27 F.2d 253; *People* v. *Colón*, 65 P.R.R. 714; *People* v. *Vázquez*, 68 P.R.R. 62.

have said that murder is a single crime which is divided into degrees depending on the wickedness on the part of defendant and for the sole purpose of the imposition of the penalty. *People* v. *Ortiz,* 62 P.R.R. 246, and *People* v. *Colón,* 65 P.R.R. 714. The difference between the two degrees of murder consists in that in the first-degree murder the death is committed with malice aforethought and deliberation, while in the second-degree murder the death is malicious and premeditated, without there being deliberation. *People* v. *Blanco,* 77 P.R.R. 726. Deliberation being a subjective act of the accused, it can not be proved by direct evidence, and it is therefore necessary to resort to the facts of the case in order to determine whether deliberation may be rationally inferred therefrom. *People* v. *Rosario,* 67 P.R.R. 346. It is logical to conclude that the evidence in support of a conviction for the crime of murder in either degree is generally the same. In the instant case, at least, it was the same. Consequently, the appellant was not bound to confront evidence foreign to the crime of which he was convicted and which, for that reason, might prejudice his rights.

■ On the other hand, to hold that if the case had been prosecuted for the crime in the second degree the jury would have had an opportunity to choose only between that crime and voluntary manslaughter, seems rather speculative and, consequently, a very weak basis for alleging prejudice, on the assumption that in such case the jury would have elected to find the defendant guilty of voluntary manslaughter. In the absence of a showing to the contrary, we presume that the jury, in the performance of its duty, considered the whole of the evidence introduced by the parties and that, in the light of the instructions given by the judge on the two degrees of murder and voluntary manslaughter, they arrived freely at the conclusion that the appellant had committed the crime of murder in the second degree. The jury reached a similar

conclusion at the first trial and brought a verdict declaring him guilty of murder in the second degree.

The first error was not therefore committed.

■ There is no merit in the second error. The jury's verdict is amply supported by the evidence. The death of corporal Miranda was not produced on the occasion of a heat of passion or sudden quarrel as alleged by the appellant. On October 30, 1950, the appellant was traveling, in the company of other Nationalists, among them Ramón Pedrosa, in a public Chevrolet car along Arenas Street of Ponce in an easterly-westerly direction. They ran into the police patrol which was travelling from north to south along León Street. This patrol was driven by policeman Pascual Pagán who was accompanied by corporal Aurelio Miranda. They chased the automobile occupied by the Nationalists along the road leading from Ponce to Adjuntas, and overtook it near the cement plant of Ponce. They were ordered to stop, which they did. The police patrol stopped in front of them, corporal Miranda alighted therefrom and went over to the driver of the automobile occupied by the Nationalists and asked him where they were going.[4] The chauffeur answered that they were going to Adjuntas, and thereupon corporal Miranda said to policeman Pagán, "Let's throw them into the patrol." Pedrosa asked corporal Miranda, "what did you say, corporal?", and right away fired one shot at him with a firearm and Miranda fell to the ground. The Nationalists, among whom was the appellant who was carrying a firearm, abandoned the vehicle. Pedrosa approached corporal Miranda and fired two other shots, one by the back and the other through the head, and then seized his official revolver. Pagán hid behind the patrol door near the steering wheel while the Nationalists

---

[4] Policeman Pagán testified on cross-examination that corporal Miranda alighted from the patrol car with his revolver in his hands. Later, on redirect examination, he asserted that when Miranda walked over to the automobile occupied by the Nationalists he did not carry any weapons in his hands.

kept firing at him. Other policemen on duty in front of the cement plant arrived. The Nationalists also fired at these policemen as they ran toward a mountain.

In a written confession made by the appellant, which was admitted in evidence, he testified that they were on their way to Peñuelas. He was asked, "what happened when you were stopped by the police patrol near the cement factory in Ponce?" He answered, "We were compelled to fire, we had to fire at those riding in the police patrol." He also testified that he fired three shots at the policeman on duty at the cement plant while the witness fled; that the Nationalists were going to attack the police headquarters in all the towns; that the group headed by Pedrosa, to which the appellant belonged, was supposed to attack the Ponce headquarters. He explained that although they were headed for Peñuelas, where it was known that a shooting had taken place, they were forced to head for Adjuntas because the police turned them off; they carried weapons and bombs in the automobile.

The appellant's defense theory was alibi. He attempted to prove, unsuccessfully, that he was somewhere else when the death of corporal Miranda occurred.

The argument that corporal Miranda's death was the result of a sudden quarrel or heat of passion is untenable. The Nationalists, in a concerted plan, were going to attack police headquarters. The appellant and others were going to attack Ponce headquarters. First they attempted to go to Peñuelas, where it was already known that a shooting had occurred. Upon noticing the presence of the police patrol, they headed for Adjuntas and, upon being intercepted by the police near the cement plant of Ponce, they fired at them with the purpose unquestionably that the police would not frustrate their plans. There was no heat of passion or sudden quarrel. What happened was the execution of a previously contrived plan, the execution of a common design to attack the police headquarters and, of course, the police. Corporal Miranda's

death was malicious and premeditated. This was the findings made by the jury and there is no basis in the record for setting aside their verdict. See *People* v. *Cortés*, 79 P.R.R. 769; *People* v. *Ortiz*, 68 P.R.R. 632; *People* v. *Sarria*, 57 P.R.R. 865; *People* v. *Torres*, 75 P.R.R. 219; *People* v. *Blanco*, 77 P.R.R. 726.

The third assignment to the effect that the jury's weighing of the evidence was erroneous is frivolous. There is abundant evidence in the record, including appellant's confession, as pointed out by the Solicitor General, to establish the presence of the defendant at the scene of the events and his participation therein. Once such evidence is believed by the jury, the question on how many persons were riding in the vehicle of the Nationalists and how they were seated has no significance. The jury, on the other hand, did not place credence on the evidence of alibi offered by the defendant and we will not reverse their verdict on appeal. *People* v. *Morales*, 79 P.R.R. 569.

The fourth assignment is to the effect that the superior court erred in refusing the instruction requested by the defense on the illegal arrest and on the objection which may be raised thereto.

The instruction refused is not before us and we therefore have no knowledge of its scope.[5] Although the defense of alibi is not a ground for refusing an instruction on a defense incompatible with the alibi if the evidence for the prosecution warrants such an instruction, a question which we are not called upon to decide at this time,[6] the fact

---

[5] The instruction refused does not appear from the record before us. The only thing the record reveals is the grounds of the judge's refusal to transmit the instruction. He said: "Regarding the second instruction requested by the defense relative to the illegal arrest and the resistance to an illegal arrest, the court refuses the same as being untenable in this case inasmuch as the defendant's theory is alibi."

[6] See *People* v. *Torres*, 81 P.R.R. 659; 22 C.J.S. 118, § 54; *Henderson* v. *United States*, 237 F.2d 169; *People* v. *West*, 293 P.2d 166; *People* v. *Keel*, 267 Pac. 161; *People* v. *Reese*, 150 P.2d 571; *State* v. *Lora*, 305 S.W.2d 452. See, however, *People* v. *Estrella*, 45 P.R.R. 448.

that we have no knowledge of the instruction refused, and particularly the fact that the evidence for the prosecution does not reveal justification or excuse for killing corporal Miranda, are sufficient to warrant the dismissal of this error. Furthermore, the appellant himself admits in his brief, relying on a citation from Corpus Juris Secundum, that a person who has been illegally arrested can not fire at an officer or use a deadly weapon to resist the arrest, unless he has good reasons to believe that he is in peril of losing his life or suffering great bodily injury, and acts in good faith under this apprehension. The appellant was not in that situation, nor is there any reasonable indicia that he acted in good faith under the apprehension that his life was in danger, or that he was incurring the risk of suffering great bodily injury.

 Neither was the fifth and last error committed, and we are agreed that it is frivolous, accepting the following reasoning of the Solicitor General: "In passing judgment on the voluntariness of a confession admitted in a criminal prosecution, it is incumbent on this court to determine whether the confession was obtained by means of physical or psychological coercion 'in the light of the admitted or undisputed facts.' *People* v. *Meléndez*, 80 P.R.R. 759, 767; *People* v. *Fournier*, 80 P.R.R. 376. In this case it appears unquestionably from the evidence that the appellant was not coerced when he gave the inculpatory statement before the district attorney. However, there is conflict in the evidence on whether the police had maltreated him prior thereto. Hence, the petition to set aside the defendant's conviction is frivolous because, as to the voluntariness of the confession, 'the testimony was highly contradictory.' On the contrary, the judge acted correctly in admitting the confession and leaving the resolution of the conflict to the jury. *People* v. *Fournier*, 77 P.R.R. 208, 269.

"Neither did the court err in refusing to mutilate the confession admitted in evidence. (Tr. Ev. 58, 59). Far from containing foreign matter, it strengthens the theory of The People and accounts for the origin and motive of the murder committed." (Brief for the Solicitor General, pp. 11, 12.)

For the reasons stated the judgment appealed from will be affirmed.