**STATE of Missouri, Plaintiff-Respondent,**

v.

**Lawrence FOSTER, Defendant-Appellant.**

**No. 12868.**

Missouri Court of Appeals, Southern District, Division Two.

Jan. 31, 1984.

Motion for Rehearing or Transfer Denied Feb. 21, 1984.

Application to Transfer Denied March 20, 1984.

· Lawrence J. Fleming, Thomas F. Flynn, Kaveney, Fleming, Russell, Beach & Mittleman, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

A jury has found defendant Lawrence Foster guilty of attempted robbery, as defined and denounced by §§ 564.011.1 and 569.030, RSMo 1978, and has assessed his punishment at imprisonment for a term of 6 years. Defendant appeals.

■ Having had a verdict, the State is entitled to have this court take and consider the State's evidence as true and give the State the benefit of all reasonable inferences to be drawn therefrom, disregarding all evidence and inferences to the contrary. *State v. Jones,* 594 S.W.2d 932, 935[2] (Mo.1980). So taken and considered, the record shows: On Saturday afternoon, November 7, 1981, Debbie Freeman, a public school teacher, went shopping at a covered regional shopping mall in south Springfield.

Mrs. Freeman had difficulty in finding a place to park her car. While she was trying to locate an unoccupied slot, she noticed the defendant standing by a parked automobile. She finally found a parking place. Mrs. Freeman was looking in her purse for some sinus medicine when the defendant opened the door on the left side of the car.

Standing behind Mrs. Freeman "and holding a gun to [her] head," defendant said "Give me your purse or I'll shoot you." Mrs. Freeman complied. She was then instructed to "put the keys in the ignition and to drive out of the parking lot ...." Frightened, Mrs. Freeman had difficulty finding her keys. The defendant became irritated; at Mrs. Freeman's suggestion that her car keys might be in her purse, defendant returned the purse, asking how much money was in it. Mrs. Freeman replied that she had less than $10. This angered the defendant, who then demanded Mrs. Freeman's wedding rings.

At this point, the defendant brought the gun from behind his victim's head and pointed it in her face. Mrs. Freeman thought the gun might not be "a real gun" but she was still "very terrified." The defendant became "very nervous" and got in Mrs. Freeman's car, motioning with the gun for her to "scoot over." Mrs. Freeman did scoot over, managed to unlock the other door, and fled. Having escaped, Mrs. Freeman reported the incident to local security officers and this prosecution followed.

■ The defendant first complains of the admission of State's exhibit 3, a toy pistol which was used in the robbery. It is true that the pistol is a toy, made in Hong Kong, but it is sufficiently realistic to be quite convincing in the hand of a malefactor. At a short distance it resembles a small caliber revolver, possibly a Beretta. And in any event, the fact that the pistol is a toy pistol is of no consequence. The defendant was not charged with armed robbery; he was charged only with attempted robbery. Section 569.030 requires a forcible stealing, but as a matter of general law the force necessary to constitute robbery may be constructive as well as actual, and may consist in the intimidation of the victim, or putting him in fear. 67 Am.Jur.2d, Robbery § 22, p. 43. We are wholly unwilling to give the phrase "threatens the ... use of physical force," made applicable by

§ 569.010(1), any construction narrower than the words "putting [the victim] in fear of some immediate injury to his person" which appeared in former § 560.120. It is still the law that robbery in the second degree may be accomplished without an assault by putting the victim in fear of personal injury even when there is no actual possibility of it, as where the robber flourishes a harmless imitation pistol or falsely pretends to be pointing a pistol supposedly concealed in his pocket. *State v. Keeney*, 425 S.W.2d 85, 89[2] (Mo.1968); *State v. Medley*, 353 Mo. 925, 927–29, 185 S.W.2d 633, 634[1, 2] (1945).

Such matters aside, defendant's counsel on appeal—who did not represent him at the trial—has contrived to establish that the defendant was denied the effective assistance of counsel at the trial on the merits. To establish this premise, counsel has briefed and argued three assignments of error. The first of these assignments again has to do with the reception of the toy pistol in evidence. By an elaborate and partly fallacious inductive process, counsel concludes that the pistol should have been subject to the exclusionary rule because the investigating officers obtained the defendant's written consent to search his vehicle—where the pistol was found—in violation of defendant's Sixth Amendment right to counsel. The substance of this argument is that the investigating officer's request for consent to search defendant's automobile amounted to postarraignment interrogation within the prohibition of *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), which involved placing a paid informant in the same cellblock with an indicted defendant in order to obtain incriminatory statements. It stands admitted that his point was not properly preserved for review and is not before the court except as "plain error."

After the defendant's motion to suppress was denied, the cause proceeded to trial. The State had evidence that part of the attempted robbery was observed by two other persons, a husband and wife, who were parked on the lot near the defendant's vehicle. The wife had the presence of mind to obtain the defendant's vehicle registration (license plate) number. Inquiry of the Division of Motor Vehicle and Driver Licensing led Springfield officers to the defendant and on November 12, 1981, the defendant was taken in custody and confined in the Greene County Jail.

On the same day, the victim and her husband contacted plainclothes officer David Asher, a peace officer of 15 years' experience. Mrs. Freeman identified the defendant from a photographic display, and officer Asher took the victim's statement. The statement is not before us, but it is clear that officer Asher learned of the existence of the pistol when he took the victim's written statement on November 12. On cross-examination, officer Asher was asked the following question: "Q. And after she finished making this statement, did you suggest to her that—did she—did you give the impression the gun was a toy? A. Possibly, that I did. I don't recall, specifically, that I had her add anything about the gun. I do recall having her expound in regards to what she wrote in her statement. Q. *And let me get a copy of your statement, here, and let you look at it to refresh your memory.* (Our emphasis.) A. Yes. Q. Let me ask you, again, at the conclusion of her testimony—of her statement, did you suggest that she add—may I—did you suggest that she add the statement including an impression that the gun may have been a toy? A. I think the fact the gun could have been a toy, yes, I did...."

Our resolution of the first point tendered might be more certain and confident if appellate counsel had made the written consent and the victim's statement available to the court, but a reading of the whole record fairly establishes the following facts: When Asher interviewed the victim on November 12, 1981, he learned that a pistol, possibly a toy, but perhaps the real article, had been used in the attempted robbery. The defendant's automobile was orderly impounded by the Sheriff of Polk County at the request of Springfield officers. As soon as practicable, officer Ash-

er, accompanied by a deputy sheriff of Polk County, conducted a warrantless search of the vehicle.

██ Bearing these circumstances in mind, we cannot hold, as a matter of plain error, that the exclusionary rule should have been applied to the toy pistol. Since *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), was handed down in 1976, routine inventory searches of impounded automobiles without a warrant have been held lawful in order to protect the owner's property while it remains in police custody, to protect the police against claims or disputes over lost or stolen property, and to protect the police themselves from potential danger. Id., 428 U.S. at 369, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005. And, an officer's suspicion that contraband or other evidence may be contained in the automobile does not make an otherwise valid inventory search unlawful. See, e.g., *United States v. Leonard,* 630 F.2d 789, 791 (10th Cir.1980). To reiterate, we cannot say as a matter of plain error that the pistol was erroneously received.

The appellant's second and third assignments of error overlap and are interrelated. Both are advanced as matters of plain error because none of the allegations of error now assigned were presented in the defendant's motion for new trial as required by Rule 29.11(d). The questions presented are: 1) Was defendant's character put in issue either by the testimony of witness Woodward or by the defendant's own testimony so as to require the trial court to give Instruction 2.50, MAI–CR.2d, which advises the jury of the effect of a defendant's previous good character as bearing on his guilt or innocence? 2) Did the trial court err as a matter of plain error, in failing to restrict the State's cross-examination of witness Woodward or the defendant upon the subject of the defendant's *prior good character?* These questions will be addressed indirectly.

James Woodward was Chairman of the Music Department at the college defendant was attending at the time the crime charged was committed. The testimony which defendant contends required the giving of Instruction 2.50 was given by witness Woodward on direct examination. As material, that testimony was:

\* \* \* \* \* \*

Q. In line with your duties of teaching, do you have responsibilities to the students to get acquainted with them and interact with them?

A. Quite a bit. Quite a bit.

\* \* \* \* \* \*

Q. You do know the defendant, Lawrence Eugene Foster, and did you know him before November 7th, 1981?

A. Yes.

Q. How long did you know him?

A. He became a student ... the previous Fall, so I had known him a little over a year. He was a music major in our department.

\* \* \* \* \* \*

Q. Do you know other students who know Larry Foster?

A. Yes.

\* \* \* \* \* \*

Q. So he had a class with you?

A. No.

Q. You said that you did know other people who—

A. Yes. He was just one in the department, one of our majors.

\* \* \* \* \* \*

Q. Were you ever present when these people who you—both you and Larry knew discussed Larry's reputation for truthfulness? From their discussions, could you tell what his reputation was for truthfulness?

A. He was one of our students, and his truthfulness was never in question.

Q. And what about his reputation for peacefulness?

A. *Oh, it was never in question.* He was one of our majors. That was the—one of my family of students.... (Emphasis ours.)

The defendant gave the following testimony on direct examination:

Q. [Have] you ever been in trouble with the law or the legal community?

A. No, just my dad.

Q. Just your dad?

A. He was the law in our house, but, you know—

Q. So you were in trouble with your dad, as far as the law goes?

A. Yes....

▮ The initial question, to reiterate, is whether the quoted testimony was sufficient to put the defendant's character in issue. We reject out of hand the argument that defendant's testimony required the trial court to give Instruction 2.50; an instruction upon the good character of the defendant is necessary only when there is substantial evidence tending to show the defendant's good character. *State v. Moore*, 303 S.W.2d 60, 70[14] (Mo. banc 1957); *State v. Baird*, 288 Mo. 62, 67–69, 231 S.W. 625, 627, 15 A.L.R. 1035, 1038–39 (1921); *State v. Underwood*, 530 S.W.2d 261, 262[1] (Mo.App.1975). Defendant's unresponsive but negative answer to the question whether he had ever "been in trouble with the law" was insufficient to put his character in issue. *State v. Millard*, 242 S.W. 923, 928[6] (Mo.1922).

▮ The testimony given by witness Woodward presents more difficulty. It is not essential to put character in issue with the rote question "Are you familiar with (or "Do you know") the defendant's reputation in the community where he resides for being an honest, law-abiding citizen?" It may be granted that the questions to Woodward were ineptly put, but inadvertently or otherwise, the effect of counsel's questions was to establish Foster's reputation, not in the community where the college is located, but at the college he attended. This was entirely proper. *State v. Jackson*, 373 S.W.2d 4, 8–9 (Mo.1963). The defendant's usual and customary place of residence was St. Louis, not the city in which the college was located. Here, the place where the defendant exhibited his traits of character was the institution he attended in order to obtain his education. Cf. 5 Wigmore, Evidence § 1616 (Chadbourn Rev.1974).

▮ All know that it is the defendant's "general reputation," i.e., the general opinion of those who work or associate with a criminal defendant regularly, which must be put in issue, and it is sometimes said that character witnesses may not base their testimony on anything but hearsay. *Brown v. Haynes*, 385 F.Supp. 285, 294[18] (W.D.Mo.1974); *State v. Ruhr*, 533 S.W.2d 656, 659[5] (Mo.App.1976). All the same, simply because the evidence is hearsay, it must be shown that a character witness' testimony is founded on adequate knowledge. So, although a first impression of counsel's approach to Woodward's knowledge may seem to be an attempt to elicit a personal opinion, if counsel's preliminary foundation is given fair intendment, it represented an effort to establish the adequacy of Woodward's testimonial qualification—an attempt to show, as it were, that he *actually had* knowledge of the defendant's reputation.

▮ Of course, counsel's interrogation of witness Woodward concerning the defendant's reputation for truthfulness must be set to one side. Establishing a criminal defendant's reputation for "truthfulness" does not put his character in issue in this State, *State v. Underwood*, 530 S.W.2d at 262–63[1][2], even though a different rule is followed in some jurisdictions. But the part of counsel's interrogation of witness Woodward to which we look is as follows:

"Q. And what about his reputation for peacefulness?

A. Oh, it was never in question...."

Thereupon, the State began cross-examination; a question directed to Woodward's knowledge was partially framed. Counsel for the defendant objected. Forthright counsel for the State, out of the jury's hearing, announced to the court:

"I intend to ask if he had heard that the defendant was questioned as being responsible for taking $400.00 from the

cafeteria where he worked at [the college defendant attended]. I would cite the Court to *State v. Harris*, 558 S.W.2d 282 [(Mo.App.1977), in turn quoting from *State v. McCoy*, 458 S.W.2d 356 (Mo. 1970)].…"

The State was then permitted to ask witness Woodward if he had "heard that the defendant was questioned as the prime suspect as the person responsible for the theft of $400.00 from the cafeteria where he worked …." The witness replied "No" whereupon the State repeated the same question, asking if such knowledge would affect the witness' opinion of defendant's honesty.

At this point, counsel again asked permission to object out of the hearing of the jury; permission was granted and defense counsel protested that she had not intended to put defendant's reputation for honesty in issue. The court simply replied "Well, honesty and truthfulness are just about the same." Thereupon, the State again put the same question as before to witness Woodward. Woodward replied "Yes, I suppose so."

As we have seen, the defendant's negative response to the question whether he had "ever been in trouble with the law or the legal community" was insufficient to put his character in issue. Nevertheless, after the defendant testified the State called the Dean of Students at the college defendant attended and asked this witness if he knew the defendant's reputation for honesty. Without having been permitted to answer that question, he was permitted to testify that he "had questions about the honesty area."

 The conclusion we draw from the record, recited in tedious and repetitive detail, is that there is plain error in the record and because of that error, the conviction must be reversed and the cause must be remanded. Our courts have been reluctant to find plain error in criminal cases, in part because the term "plain error," like other terms of calculated obscurity, does not lend itself to objective measurement. Nevertheless, we are convinced it was present here, for the following reasons:

1. It is arguable that counsel's interrogation of witness Woodward was sufficient to put the defendant's character in issue. Very indirectly counsel asked about defendant's reputation for peaceability and quietude. Because the only overt criminal act shown was the force which is an element of robbery, such a character trait would be relevant. And, the testimony of a witness that he has never heard anything against the character or reputation of a defendant is perhaps the most cogent evidence that the defendant's reputation is good. *State v. Cavener*, 356 Mo. 602, 611–12, 202 S.W.2d 869, 875 (1947).

2. The trial court assumed that in the context of character evidence, "honesty" and "truthfulness" are the same. They are not. *State v. Wells*, 586 S.W.2d 354, 359[8] (Mo.App.1979). The distinction has been noted in other cases, e.g., *State v. Williams*, 337 Mo. 884, 898, 87 S.W.2d 175, 182, 100 A.L.R. 1503, 1513 (1935).[1] We do not, however, intend to base this opinion upon the distinction between "truthfulness" and "honesty" as character traits.

3. The prejudicial incongruity which we perceive is that the trial court did not give MAI–CR.2d 2.50, but allowed the State to proceed as if defendant's character were in issue. The State cannot have it both ways, i.e., that defendant's character was not in issue and therefore there was no error in refusing MAI–CR.2d 2.50, and in the same breath argue that it was proper to impeach Woodward as if he were a character witness and to attempt to put the defendant's character in issue before he had done so by calling the Dean of Students. Cf. *State v.*

---

1. "[T]he writer [has] expressed the opinion that the reputation of the witness for honesty also might be shown, on the theory that honesty is simply trustworthiness in both word and deed … but there are cases indicating a view that a man may bear a bad reputation for honesty, although not considered untruthful, as where he fails to pay his debts, or is a sharp trader, and the like.…"

*Baird,* 288 Mo. at 69, 231 S.W. at 627–28[7, 8], 15 A.L.R. at 1039–40.

To tidy up without prolonging the opinion intolerably, the appeal presents an extraordinary, though not unique, state of fact. The defendant is a black man, approximately five feet tall. On a busy day in a part of the state which has a negligible black population, he appeared at a busy shopping mall wearing red trousers, a red shirt and a purple jacket. There was evidence from which a jury of rational men and women could find beyond a reasonable doubt that he thereupon, in full view of competent eyewitnesses, attempted to take a young woman's purse, and finding that insufficient, attempted to take her wedding rings.

And so, if there was ever a stranger in a strange land who needed the full protection the law offers criminal defendants, this defendant was he. Instead, he received the worst of both worlds, so to speak. He *may* have had a good reputation at the school he attended; the effect of such prior good character was not tendered to the jury. Nonetheless, the State was permitted to imply that he was a thief and to attempt to impugn his good character. One could not point to any single trial omission as "plain error" but in the circumstances, the concatenation of oversights denied the defendant the one fair trial to which he is indubitably entitled.

Our disposition of the appeal makes it unnecessary to consider the allegation that the defendant was denied the effective assistance of counsel. For the plain error noted, the judgment is reversed and the cause is remanded.

PREWITT, J., concurs.

MAUS, P.J., dissents and files opinion.

MAUS, Presiding Judge, dissenting.

I must respectfully dissent. I do not believe the record supports the determination of plain error upon which the majority opinion rests.

Error not properly preserved will not be considered 'plain error' unless there is a finding that 'manifest injustice or miscarriage of justice has resulted therefrom,' Rule 30.20; and instructional error will not be considered plain error unless it is found that the trial court has so misdirected or failed to instruct the jury upon the law as to produce or cause manifest injustice or a miscarriage of justice. *State v. Ealey,* 624 S.W.2d 465, 467 (Mo. App.1981).

The majority opinion finds plain error from an incongruity in the trial court failing to give MAI–CR2d 2.50 on the one hand and the cross examination of Woodward and the presentation of the testimony of the Dean of Students on the other hand. Pattern instruction MAI–CR2d 2.50 concerns the character of a defendant bearing on guilt or innocence. Note on Use 1 declares it must be given "whenever there is evidence of defendant's general reputation of good character." When read in connection with the instruction itself, this language may be said to refer to those traits which ordinarily would be involved in the offense. MAI–CR2d 2.50; *State v. Wells,* 586 S.W.2d 354 (Mo.App.1979). The testimony of Woodward that the defendant's truthfulness was not questioned did not require this instruction. MAI–CR2d 2.50, Note on Use 2; *State v. Wells,* supra; *State v. Woodfin,* 559 S.W.2d 273 (Mo.App. 1977). Only Woodward's testimony that the defendant's peacefulness was not questioned can be said to require the instruction. However, the force of that testimony must be determined in the light of his admission his opinion concerning defendant's reputation for truthfulness would be affected if he had heard the defendant was the prime suspect in connection with two thefts. Evidence was later properly received that in fact the defendant was investigated in connection with four or five incidents of various sorts, "most of them robberies." *State v. Stearns,* 617 S.W.2d 505 (Mo.App.1981). Considering all of the evidence, I question if Woodward's testimony was substantial evidence of a good character trait of peacefulness. Assuming that it was, it could have been prejudicial to have

**356**

given MAI–CR2d 2.50. It could have served to emphasize the evidence unfavorable to the defendant. The failure to give that instruction was not plain error.

As stated, Woodward testified concerning the defendant's reputation for truthfulness. It is proper to test a witness vouching for the good character of a defendant by inquiring into his knowledge of reports concerning acts of misconduct of the defendant. *State v. Myers*, 579 S.W.2d 828 (Mo.App.1979); *State v. Harris*, 558 S.W.2d 282 (Mo.App.1977). There may be a difference between truthfulness and honesty. It has been said honesty encompasses truthfulness and has a more comprehensive meaning. *State v. Wells*, supra. I believe it was not error to ask Woodward if knowledge of the investigations would affect his opinion of the defendant's reputation for honesty, a term which includes the term truthfulness used in Woodward's direct examination. *State v. Harris*, supra. It was not plain error.

The Dean of Students testified in rebuttal. Woodward's testimony has been recounted. The defendant testified concerning his extensive activities in church work, that he did not drink or smoke, and had never been in trouble with the law. The Dean's rebuttal testimony concerning the defendant's reputation for honesty was not plain error. The defendant's explanation for being at the mall and of his activities there was far from convincing. The same is true of his explanation for having a realistic toy gun in his car. The quantum of proof is properly considered in determining plain error. *State v. Miller*, 604 S.W.2d 702 (Mo.App.1980). I do not believe such error is established by the record.