**UNITED STATES of America, Appellee,**

v.

**Elijah INGRAM, Appellant.**

**No. 87–1257.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1988.

Decided Feb. 19, 1988.

Lee Lawless, Asst. Federal Public Defender, St. Louis, Mo., for appellant.

Dick Poehling, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before WOLLMAN, Circuit Judge, ROSS, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Elijah Ingram was convicted by a jury of possession of an unregistered sawed-off shotgun and of being a convicted felon in possession of a firearm. The district court[1] sentenced Ingram to imprisonment for concurrent terms of six years and two years, respectively. On appeal, Ingram urges reversal on two grounds: (1) the district court's denial of the defendant's motion to suppress certain post-arrest statements; and (2) the district court's denial of the defendant's motion for a mistrial premised on the government's alleged discriminatory use of peremptory challenges. We have reviewed these arguments, and conclude that the decision of the district court should be affirmed.

## A. Background

On April 29, 1986, St. Louis police officers Ronald Jackson and Gary Sittum were called to investigate an individual flourishing a weapon at the intersection of Cass and Hogan Streets in St. Louis, Missouri. The radio call included a description of two vehicles involved in the incident, one being an orange Ford Torino. The officers proceeded to the scene but could not locate either vehicle or any sign of trouble. After leaving for about ten minutes to respond to another call, the officers returned to the scene and observed an orange Torino parked on the street. They parked their car and approached the Torino. Officer Jackson then heard what sounded like an argument coming from inside the building in front of which the Torino was parked. As officer Jackson approached the building and looked through the front window, he observed the defendant sitting in a chair, holding a sawed-off shotgun. Officer Jackson watched as the defendant placed the weapon on the floor. The officers then entered the building, seized the shotgun and placed the defendant under arrest. When the defendant stood up from the chair, a 12 gauge shotgun shell fell from

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

his lap. A second shell was found in his shirt pocket.

The defendant was escorted out of the building and read his *Miranda* rights from a police department rights card.[2] The defendant acknowledged to the officers that he understood his rights. In preparation for transporting the defendant to the police station, officer Stittum asked him if the Torino was his car and whether he wanted it towed or left where it was. The defendant said the car was his and that he wanted it left alone. Officer Stittum then took the defendant's keys and locked the car, as defendant had requested. On the way to the station the defendant made a statement admitting ownership of the gun and claiming that he used it to hunt rabbits. This statement was not made in response to any question or other comment by either officer.

## B. Post-arrest Statements

■ The district court concluded, from all the facts and circumstances of the case, that the defendant knowingly and intelligently waived his right to remain silent. Whether a defendant has waived his *Miranda* rights is a question of fact for the district court which will not be overturned unless clearly erroneous. *United States v. Dougherty*, 810 F.2d 763, 773 (8th Cir. 1987); *United States v. Ashby*, 771 F.2d 392, 395 (8th Cir.1985). The question is not one of form, but rather turns on whether the totality of the circumstances reveals a voluntary, knowing, and intelligent waiver. *Dougherty*, 810 F.2d at 773; *Lamp v. Farrier*, 763 F.2d 994, 997 (8th Cir.), *cert. denied*, 474 U.S. 1009, 106 S.Ct. 534, 88 L.Ed.2d 465 (1985). "[A]n explicit statement of waiver is not invariably necessary to support a finding that the defendant waived the right to remain silent * * *." *North Carolina v. Butler*, 441 U.S. 369, 375–76, 99 S.Ct. 1755, 1758–59, 60 L.Ed.2d 286 (1979).

■ Here, the record is sufficient to uphold the district court's finding of a volun-

tary waiver. The district court's conclusion was based on more than just the defendant's silence, as the defendant argues. The defendant was informed of his rights, stated that he understood them, and then chose to speak to the officers. Under the facts, we cannot say that the district court's finding that the defendant had waived his right to remain silent was clearly erroneous.

## C. Use of Peremptory Challenges

■ The original venire panel called for trial of this case consisted of 35 persons, two of whom were black. The prosecution utilized one of its six peremptory challenges to strike one of the two potential black jurors from the panel. The second black juror remained on the panel for the duration of trial.

After the peremptory strikes were announced, the defendant, a black man, moved for a mistrial based on the government's unconstitutional use of its challenges in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The district court overruled the motion without requiring the prosecution to provide an explanation for its strike of the black juror, holding, implicitly, that the defendant had failed to establish a prima facie case as required by *Batson*.

Under *Batson*, a prima facie case of purposeful discrimination in the selection of a jury panel is established by a showing that the government's use of its peremptory challenges and any other relevant circumstances "raise an inference that the prosecutor * * * exclude[d] * * * veniremen from the petit jury on account of their race." *Id.* at 97, 106 S.Ct. at 1723. "In determining whether a defendant has established the requisite showing of purposeful discrimination, the trial court should consider all relevant circumstances including, but not limited to, a pattern of strikes against black jurors, as well as the prosecutor's questions and statements during voir dire." *United States v. Porter*, 831

**2.** There was some confusion at the suppression hearing and at trial regarding which of the two police officers actually read the defendant his

rights. The defendant does not dispute, however, that one of the two officers did give the defendant a *Miranda* warning at this point.

F.2d 760, 767 (8th Cir.1987), *cert. filed* (Dec. 4, 1987). Once a prima facie case has been established, the burden shifts to the government to provide a neutral explanation for the peremptory challenge. *Id.; Batson*, 476 U.S. at 96–98, 106 S.Ct. at 1723.

In this case, the defendant, in support of his argument that a prima facie case of discrimination has been established, relies solely on the fact that the prosecution struck one of two potential black jurors. The Eighth Circuit has said that "bare reliance on the fact that the government used one of its peremptory challenges to exclude one of two black veniremen falls short of raising an inference of purposeful discrimination necessary to establish a prima facie case under *Batson*." *Porter*, 831 F.2d at 767–68. *See United States v. Montgomery*, 819 F.2d 847, 851 (8th Cir.1987). We conclude that the facts and circumstances of this case likewise do not raise the necessary inference of discrimination and that the district court was correct in overruling the motion for a mistrial without further inquiry of the prosecutor.[3]

### D. Conclusion

The decision of the district court is affirmed.

---

**3.** This case is easily distinguished from *United States v. Battle*, 836 F.2d 1084 (8th Cir.1987). In *Battle*, the court found that a prima facie case was established when the government used five of its six challenges to strike five of seven potential black jurors. In remanding the case for inquiry of the prosecutor, the court emphasized that "the striking of a single black juror for racial reasons violates the equal protection clause, even though other black jurors are seated, and even when there are valid reasons for the striking of some black jurors." *Id.* at 1086. While this is undoubtedly true, the court did not state or imply in *Battle* that the striking of a single black juror in and of itself always establishes a prima facie case of discrimination under *Batson*. Here, unlike the situation in *Battle*, the facts do not support the necessary inference of discrimination.