**STATE of Missouri, Respondent,**

v.

**Will E. CLARK, Appellant.**

**No. WD 38406.**

Missouri Court of Appeals,
Western District.

July 12, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 30, 1988.
Application to Transfer Denied
Oct. 18, 1988.

James R. Wyrsch, Charles E. Atwell, and Susan M. Hunt, Koenigsdorf, Kusnetzky & Wyrsch, Kansas City, for appellant.

William L. Webster, Atty. Gen., and Jatha B. Sadowski, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P.J., and REINHARD and DOWD, Special Judges.

CLARK, Presiding Judge.

Will E. Clark was convicted by a jury of second degree murder, first degree robbery and armed criminal action, and sentences of life imprisonment were imposed. On this appeal, he raises six points of alleged trial error. No merit is found in any of the points and the judgment and sentences are affirmed.

The sufficiency of the evidence to support the convictions is not in issue. On January 30, 1985 at approximately 6:20 p.m., a black man entered the Payless Shoe Store at 4922 Swope Parkway in Kansas City. He first confronted Harold Mayberry, a security guard on duty at the store, and while pointing a gun at Mayberry, demanded that he surrender his weapon. Mayberry complied. The man then proceeded to a counter where he told a clerk, Darleatha Briggs, to hand over the money from the cash register. A shot was fired and Briggs fell, mortally wounded in the abdomen. The events were also witnessed by Joe Fulson, the store manager and Cynthia Fields, a sales clerk. Mayberry, Fulson and Fields all identified Clark as the robber. The defense was alibi. Other facts relevant to the points on appeal will be included in the discussion of those points.

### I.

Appellant's first point concerns the admission in evidence of prior inconsistent statements made by witnesses Wanda Jones and Jamie Bowman, who were appellant's girlfriends but who were called to testify for the state. Appellant argues that the prior statements of Jones and Bowman, repudiated by them at trial, were improperly received as substantive evidence to prove the contents of the statements.

The point arises in the following factual setting. In the course of investigating the crime, the police questioned Jones and Bowman. Jones was interviewed because it had been determined that she owned a 1976 Lincoln automobile similar in appearance to a car seen at the Payless store at the time the robbery occurred. In a statement given to the police, Jones acknowledged that she had loaned the car to appellant earlier and that appellant's father had returned it the day after the Payless robbery. The police also questioned Jamie Bowman known by them to be appellant's companion. Bowman gave a statement to the effect that appellant had admitted to her his participation in the Payless crime.

The state was aware in advance of calling Jones and Bowman as witnesses that they would not testify in accordance with

their statements. Jones had professed not to remember the statement and Bowman contended the statement was coerced by the police and was untrue. Jones and Bowman were called as witnesses for the state essentially for the purpose of introducing in evidence the contents of their prior statements. The latter were received in evidence, over defendant's objections, as substantive evidence of the facts recited in the statements.

Appellant first argues that the prior statements of Jones and Bowman should have been excluded because the state laid no foundation, and in fact could lay no foundation, for admission of a prior inconsistent statement by a witness called on behalf of the state. The required foundation, appellant asserts, can only be established if the party calling the witness demonstrates surprise at the contradictory testimony and also shows that by his in-court testimony, the witness has become a witness for the adverse party. Cited are the cases of State v. Byrd, 676 S.W.2d 494 (Mo. banc 1984), cert. denied, 469 U.S. 1230, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985), and State v. Moutray, 728 S.W.2d 256 (Mo. App.1987).

In State v. Byrd, supra, defendant's putative wife, Sandra, was called as a witness for the state. She had previously given a statement in which she quoted the defendant as having admitted committing the crime. At trial, however, she denied giving the statement. Over defendant's objection, the state was permitted to play a tape recording of Sandra's prior statement. The opinion held it to have been proper for the court to admit the recording as impeachment of Sandra's in-court testimony because that testimony had come as a surprise to the state and because the evidence Sandra otherwise gave was to the benefit of the defense.

Byrd is not authority applicable to the present case, even were it representative of the current law, because the prior inconsistent statement was offered only to impeach the credibility of the witness. The jury in Byrd was instructed that the prior

inconsistent statement was to be considered, "only for the purpose of determining the weight and credibility of the witness' testimony and not as evidence of guilt." Byrd, 676 S.W.2d at 503. Byrd is inapposite to the issue in this case where the prior statements by Jones and Bowman were used as substantive evidence.

Even were there to be some authoritative analogy to be drawn from Byrd, however, the effect of that opinion has been diminished if not negated by the enactment of § 491.074, RSMo 1986,[1] and by the court's opinion in Rowe v. Farmers Insurance Co., 699 S.W.2d 423 (Mo. banc 1985).

Section 491.074 provides that in any criminal prosecution for an offense under Chapters 565, 566 or 568 of the Missouri Statutes, a prior inconsistent statement of a testifying witness is admissible as substantive evidence. In criminal cases, the statute therefore displaces prior case law which limited the use of such statements. Section 491.074 is authority for the receipt in evidence of the statements by Jones and Bowman.

Also relevant to the point and to subsequent discussion of State v. Moutray, supra, is the opinion in Rowe v. Farmers Insurance Co., supra. Although Rowe announces the law applicable to use of prior inconsistent statements in civil cases, it demonstrates the progressive concept of eliminating the restrictions which have formerly prevailed in this area.

The opinion in Rowe announced that in civil cases, a prior inconsistent statement could be used to impeach a witness, regardless of which party called the witness, thereby abandoning the former rule that a party could not impeach his own witness because by calling the witness, the party had vouched for the credibility of the witness. Rowe also held that a prior inconsistent statement was available for use as substantive evidence if the witness were present for cross-examination. In the opinion, the court took note of the enactment that same year of § 491.074, and suggested that the decision conformed the evidence

1. Statutory references are to RSMo 1986.

rules in civil cases to those prevailing in criminal cases.

Apparently, from the contents of appellant's and respondent's briefs filed in this case, the opinion in *State v. Moutray, supra,* has created some confusion as to the conditions under which the prior inconsistent statements of the party's own witness may be used. In *Moutray,* the appellant complained of two errors, the use of Cherisse Moutray's prior statement as impeachment when the state claimed surprise by her testimony on direct examination and the use of the statement as substantive evidence. Citations in that opinion to *State v. Byrd, supra,* and *Rowe v. Farmers Insurance Co., supra,* require clarification.

Although *Byrd* has not been expressly overruled, it would appear that the conditions *Byrd* announces as preliminary to use of a prior inconsistent statement for impeachment no longer obtain. If, as § 491.074 provides, the statement is available without the former restrictions for use as substantive evidence, there is little if any justification to continue the restrictions where the statement is to be used only for impeachment. Moreover, by its opinion in *Rowe,* the supreme court has demonstrated its purpose to eliminate the restrictions generally on use of prior inconsistent statements.

It is clear that under *Rowe,* a party to a civil case may use a prior inconsistent statement to impeach his witness without showing surprise and without demonstrating that the witness has transferred allegiance to the adversary. Moreover, by reason of § 491.074, a party in a criminal case is free to use the statement as substantive evidence just as a party to a civil case may use such a statement under the decision in *Rowe,* free from the former constraints of the common law rules. If the *Byrd* restrictions on impeachment were considered to have survived *Rowe* and the enactment of § 491.074, the anachronistic and incongruous result would be that the state in a criminal prosecution could show the contents of a prior inconsistent statement as substantive evidence but could not use the same statement to impeach a witness without

out showing surprise and the fact the witness was testifying for the defendant. This is contrary to the spirit of liberality from dogma expressed in *Rowe* and incompatible with the legislative purpose expressed in § 491.074. To the extent *Moutray* may be construed to so hold, we believe it was in error and withdraw from that position.

■ As to appellant's first point, we conclude that § 491.074, RSMo 1986, authorizes admission in evidence of the statements made by Jones and Bowman and that such statements were available to be used by the state for impeachment or as substantive evidence, or both. Appellant further contends, however, that if the statute does apply, it is unconstitutional in his case.

Consideration must first be given to the question of whether this court has jurisdiction to decide the constitutional challenge. If the case does involve the validity of a statute of this state in the constitutional sense, the court of appeals does not have jurisdiction of the appeal. Mo.Const. art. V, § 3. The mere assertion of a constitutional issue, however, does not deprive the court of appeals of jurisdiction unless the constitutional issue is real and substantial and not merely colorable. *State v. Charity,* 637 S.W.2d 319, 321 (Mo.App.1982). As the following discussion will undertake to demonstrate, the constitutional issues appellant raises are no more than colorable.

■ Appellant first contends that permitting use of the prior statements made to the police officers denied him the right to confront the witnesses against him as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Art. I, § 18(a) of the Missouri Constitution. He bases this argument on the fact that the statements were not made in his presence and the witnesses were not sworn. This contention is insubstantial under the facts of this case. Both Jones and Bowman were present in court at the trial, they were called and testified and were in fact cross-examined by appellant. There was no confrontational violation.

Appellant next argues that application of the subject statute to his trial violates Art. I, § 13 of the Missouri Constitution prohibiting retrospective laws. He contends that because § 491.074 was enacted after the subject offense was committed, it may not be invoked in his trial, even though effective at that time.

A statute which is procedural only is applicable to pending actions. *City of Branson v. Biedenstein*, 618 S.W.2d 665, 670 (Mo. banc 1981). A statute which removes disqualifications of persons who may be witnesses or which makes previously inadmissible evidence admissible is procedural and may be applied retrospectively. *Danaher v. Smith*, 666 S.W.2d 452, 456 (Mo.App.1984); *State ex rel. Faith Hospital v. Enright*, 706 S.W.2d 852, 854 (Mo. banc 1986). Section 491.074 is procedural in nature, it was in effect well in advance of the date appellant's case was tried and it properly was applied to determine the admissibility of the Jones and Bowman statements as evidence.

Finally, appellant contends the subject statute denies appellant equal protection of the laws in that it is applicable by its terms only to certain classes of offense. A similar contention was made by the defendant in *State v. Williams*, 729 S.W.2d 197 (Mo. banc), *cert. denied*, — U.S. —, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987). The charge was sexual abuse and assault committed on an eight year old child. Section 491.060, RSMo 1986, as amended, provides that as to any prosecution of an offense under Chapters 565, 566 or 568, a child victim under the age of ten is considered a competent witness without qualification in the judicial proceeding. The court held the classification of child witnesses not subject to constitutional attack because it did not draw on any inherently suspect distinction, it did not impinge on a fundamental right and it was rationally related to a legitimate governmental interest. *State v. Williams*, 729 S.W.2d at 201–02.

The statute questioned in this case is in virtually the same format as the statute in *Williams*, it relates to the plenary power of the legislature to prescribe or alter rules of evidence and the claim by appellant is on grounds of equal protection identical to those raised in *Williams*. The decision is controlling in this case and requires that appellant's claim be rejected.

## II.

In his second point, appellant complains of the failure by the trial court to declare a mistrial in two instances of interrogation of the witness, Jamie Bowman. Both, says appellant, caused the introduction into the case of evidence of other crimes violating appellant's due process right to be tried only for the crime with which he was charged.

The first instance occurred when the prosecutor asked Bowman if she had seen appellant with a gun. She answered that she had seen him in possession of a .22 caliber handgun. The defense objected, the court sustained the objection and instructed the jury to disregard the question. We conclude that the objection was not well taken and that the question should have been permitted.

The basis for appellant's objection was apparently the assumption that appellant would be subject to prosecution for possession of a gun and if he were shown to have possessed a gun, the testimony would constitute evidence of commission of a crime not charged in this case. The assumption is flawed because the mere fact of possession of a gun does not show any unlawful conduct. The situation is comparable to that in *State v. Barnes*, 693 S.W.2d 331, 333 (Mo.App.1985), where the question was whether the defendant was entitled to a mistrial upon introduction in evidence of shotgun shells. The court observed that possession of shotgun shells is not a crime.

Even were it to be assumed, however, that proof defendant carried a weapon was potentially proof of a criminal offense, the point has no merit because the objection was sustained and appellant thereby received all the relief to which he was entitled. A mistrial is a drastic remedy to be employed only in extraordinary circumstances in which prejudice to the defendant

can be removed in no other way. The decision to grant a mistrial rests in the trial court's discretion and will be reversed only for abuse of that discretion. *State v. Smith,* 735 S.W.2d 41, 45 (Mo.App.1987). There was no abuse of discretion in this case.

The second subject of questions put to witness Bowman involved scars apparent on her face. The prosecutor asked if appellant inflicted the scars and Bowman answered that he did. Defendant objected, the court sustained the objection, but after hearing the explanation by the prosecutor for the question, the court reversed its ruling. The prosecutor, however, then withdrew the question and the jury was instructed to disregard the exchange. The appellant has no grounds under this sequence of events to assert error because his objection was ultimately sustained and he has not shown entitlement to the drastic relief of a mistrial. Notwithstanding that conclusion, the evidence was admissible and the defense objection should have been overruled, as was apparently the trial court's intention before the subject was voluntarily abandoned.

In a conference outside the hearing of the jury, the prosecutor explained that the state's evidence would show appellant became aware of the statement Bowman had given the police and in retaliation, appellant had seriously injured Bowman. The conclusion was that Bowman had retreated from her prior statement out of fear of appellant's abuse. The evidence of the facial scars was competent evidence to show appellant's consciousness of guilt and his attempt to induce false testimony by a witness. *See State v. Chunn,* 701 S.W.2d 578, 585 (Mo.App.1985).

The court properly refused to grant a mistrial on objections of appellant to the testimony by witness Bowman. Appellant's point on this subject is denied.

### III.

Appellant next asserts that the trial court erred in failing to sustain his objection to the composition of the jury based on the discriminatory use by the prosecutor of peremptory challenges to remove black venirepersons. He undertakes to invoke the protection afforded under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Because *Batson* was decided after appellant's trial, but was nonetheless applicable, *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed. 2d 649 (1987), the record on appeal lacked the material necessary to evaluate the claim. We therefore remanded the case to the trial court where a hearing on the *Batson* claim was conducted. The findings by the trial judge on the issue, together with the record of hearing are now before this court. The trial judge concluded, among other findings, the following: (1) the defendant bears an initial burden to establish a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to a discriminatory purpose; (2) the trial judge must determine whether defendant established a prima facie case, (3) appellant Clark failed to establish a prima facie case of purposeful discrimination.[2] We agree.

When this case was originally tried, no evidence conclusively indicated the race of individuals on the jury panel. Defense counsel, although given the opportunity to do so, declined to call any venireperson to testify as to his race. The choice was a matter of trial strategy. The defense relied on a statement of the perceptions formed to identify race through characteristics such as skin color and facial features. The state refused to stipulate regarding the racial composition of the venire and the court made no findings.

To remedy this oversight or deficiency in proof required to make a prima facie case under *Batson,* the defense summoned a number of venirepersons to testify at the supplemental hearing. The record does not show the number of persons who were

---

**2.** The trial court also considered the explanations given by the prosecutor for striking black venirepersons and found them to be racially neutral. We do not, however, reach that stage of the *Batson* hearing where defendant does not make a prima facie case.

members of the original venire,[3] but by calculation, they numbered thirty-nine or more. This conclusion follows because twenty-three venirepersons appeared and testified at the supplemental hearing and the court recorded the fact that efforts to locate sixteen other venirepersons had been unsuccessful. Of the venirepersons who did testify, six stated they were members of the black race. The racial composition of the trial jury was not proved because seven of their number were included in the sixteen venirepersons who did not testify at the hearing.

To establish the prima facie case of purposeful discrimination, appellant relies on proof that of the six blacks who did identify themselves through testimony, three were excused from service by the state's peremptory challenges. It is established that the state and the defense each exercised six peremptory challenges and that all defense challenges were used to excuse white venirepersons. The defense acknowledged that two of the state's challenges were used to excuse white venirepersons. The race of the sixth person so excused by the state is uncertain.

■ In *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987), the court echoed the *Batson* language in stating that a defendant may establish a prima facie case of discrimination by showing that (1) defendant is a member of a cognizable racial group; (2) the prosecutor has exercised peremptory challenges to remove members of defendant's race from the venire and, (3) these facts and any other relevant circumstances raise an inference that the prosecutor used the practice to exclude the veniremen from the petit jury on account of their race, *Antwine*, 743 S.W.2d at 64. The burden of rebutting the presumption of discrimination shifts to the state only after the defendant has made a prima facie case. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723.

The question in the present case is whether appellant has met the third condition of *Batson* by showing an inference of discriminatory practice. The trial court concluded that he did not, although in an exercise of caution, the court permitted the prosecutor to explain his challenges of black venirepersons for non-racial reasons. Several reasons support the trial court's conclusion.

It is certainly apparent that a defendant cannot support a claim of discrimination merely by meeting the first and second *Batson* conditions. Each challenge of a venireperson who happens to have the same racial origin as the defendant is not suspect on that ground alone. It is the surrounding circumstances which must be taken into account, together with the racial origin of the defendant and the members of the venire, which constitute a matrix for evaluation of potential discriminatory abuse. Thus, if the defendant and all members of the venire shared a common racial origin, it would be fatuous to brand a peremptory challenge suspect because the defendant and the challenged venireperson were members of the same race.

■ In the present case, appellant has singled out, as a basis for his claim that a prima facie case of discrimination was made, the facts that he is black and three black venirepersons were excused on peremptory challenges by the state. There was no proof as to the race of seven members of the trial jury and no proof of the racial origin of at least sixteen members of the venire. In short, there were no other relevant circumstances present, apart from the defendant's race and the race of the three excused venirepersons, from which any inference of racial discrimination could be drawn. Appellant simply failed to make the requisite prima facie showing.

A further circumstance militates against appellant's claim. According to the proof, at least six members of the venire were black, but the state was shown only to have exercised its peremptory challenges to remove three. The remaining three challenges were thus utilized to remove venirepersons not of appellant's race. Moreover,

---

**3.** A number of exhibits, including a transcript of the trial voir dire, was introduced at the supplementary hearing. We do not have the benefit of this material, however, because they have not been filed with this court.

at least one black person served on the trial jury.

It may well be, as was stated in *State v. Butler,* 731 S.W.2d 265, 269 (Mo.App.1987), that even one instance of discriminatory conduct in selecting a jury is barred under *Batson* and that a violation of the equal protection clause is the consequence when a single venireperson is stricken for racial reasons. It does not follow, however, that racial motivation is demonstrated merely upon proof that the venireperson excused and the defendant are of the same race. Thus, in *United States v. Ingram,* 839 F.2d 1327, 1330 (8th Cir.1988), (quoting *United States v. Porter,* 831 F.2d 760, 767–68 (8th Cir.1987)), the court said "bare reliance on the fact that the government used one of its peremptory challenges to exclude one of two black veniremen falls short of raising an inference of purposeful discrimination necessary to establish a prima facie case under *Batson.*" *See United States v. Montgomery,* 819 F.2d 847 (8th Cir.1987).

In both *Ingram* and *Montgomery,* the court relied on the fact that the prosecution had used its challenges to exclude some but not all of the black venirepersons as indicative of racially neutral circumstances. The same situation is present in this case, reinforced by the fact that at least one trial juror was black. This is not to say that proportional use of challenges or partial representation in terms of race in the jury composition excuses any discriminatory use of challenges. It is only the rationale of this and similar rulings that an inference of purposeful discrimination does not arise merely upon proof as was made in this case. The defendant makes no prima facie case by proving a common racial origin with one or more excused venirepersons unless he also demonstrates surrounding circumstances in the case, the third *Batson* element, which render the state's conduct in the use of challenges to be suspect.

Finally, looking to the relevant facts of this case, it is apparent there were no racial issues present and no circumstances suggestive of any occasion for the state to employ racially discriminatory practices in selecting the jury, even were it inclined to

do so. The defendant was black, the victim, Darleatha Briggs, was black as were the witnesses who provided the identification evidence against appellant. There simply was no factor of race in the case. This constitutes a significant basis on which the trial court was entitled to find, as it did, that appellant failed to make a prima facie case. *See Commonwealth v. McKendrick,* 356 Pa.Super. 64, 76, 514 A.2d 144, 151 (1986), *alloc. denied,* 514 Pa. 629, 522 A.2d 558 (1987); *Wingo v. Blackburn,* 783 F.2d 1046, 1051 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1984, 95 L.Ed.2d 823, *rehearing denied,* —— U.S. ——, 107 S.Ct. 3244, 97 L.Ed.2d 749 (1987).

There was no proof made by appellant that racial discrimination in the selection of the jury denied appellant due process and equal protection of the law. The court properly overruled appellant's motion to quash the jury panel.

### IV.

Appellant's next point concerns testimony given by Oliver Clark, appellant's father, and evidence the state presented in rebuttal. The defense, as noted earlier, was alibi and notice of the defense was given to the state as required under Rule 25.05(A)(5). Oliver Clark testified that at the time of the commission of the crimes, he, appellant and another individual were in Belton, Missouri looking for a motor vehicle. On cross-examination, Oliver Clark was asked by the prosecutor whether he had made a statement to a newspaper reporter in August of 1985, after his son was arrested, saying that his son had been at home with him all day on the date in question. The witness acknowledged giving such a statement.

Appellant complains that these events violated the rule set out in *State v. Curtis,* 544 S.W.2d 580 (Mo. banc 1976), that state witnesses shall not be permitted to testify in rebuttal of an alibi defense where the state has failed to disclose the rebuttal evidence. Appellant acknowledges having received a copy of the statement Oliver Clark gave to an investigator for the prosecutor regarding the matter,

but says disclosure was incomplete because he was not furnished a copy of the newspaper article in which Oliver Clark's remark was quoted.

We first note that Oliver Clark himself acknowledged having received a copy of the newspaper story and he was well aware of its contents. That fact aside, however, *Curtis* is not applicable because the evidence of what Oliver Clark had previously said was not offered to prove where appellant was on the date in question, but to show that Oliver Clark had given conflicting accounts on the subject.

The rule set out in *Curtis* is based on the proposition that it is fundamentally unfair to require a defendant to disclose the details of his alibi and be exposed to potential surprise from state witnesses refuting the matters so disclosed. Here, the cross-examination was not directed at disproving the alibi by showing appellant not to have been at the place he claimed, but was intended to show Oliver Clark not a credible witness. *Curtis* does not apply in this circumstance. *State v. Toney*, 680 S.W.2d 268, 274–75 (Mo.App.1984); *State v. Simms*, 643 S.W.2d 87, 90 (Mo.App.1982).

### V.

In his fifth point, appellant contends the testimony of witnesses Fulson, Fields and Mayberry identifying appellant as the Payless Shoe store robber should have been suppressed because their evidence was the product of unduly suggestive police procedures "conducive to irreparable misidentification."

At trial, the witnesses made positive identification of appellant. In addition, the state introduced evidence of three lineups which the witnesses had attended in the course of the police investigation of the crimes. The point seems to contend that the in-court identification by the witnesses was tainted by the suggestive procedures of the lineups and that the witnesses should not have been permitted to testify at all on the subject. Two issues thereby emerge. The first is whether the lineups were impermissibly suggestive and the second is whether the witnesses had a substantial independent reliable basis for identification of appellant irrespective of the lineups.

The claim of suggestiveness rests entirely on the fact that the witnesses viewed three separate lineups in one of which, appellant was not shown and in two which he did appear. These circumstances alone provide no support for a claim that the identification of appellant by the witnesses was influenced in any way. The real thrust of appellant's complaint lies in the fact that the witnesses made a misidentification in the first lineup and they failed to identify appellant in the second. Indeed, it may well be argued that the witnesses became more certain as time passed. Those facts, however, do not bear on suggestiveness nor do they support a claim to suppress the testimony. Instead, they pertain to the credibility of the witnesses and are proper subjects for cross-examination and argument. *State v. McKinney*, 498 S.W.2d 768, 770 (Mo.1973), *cert. denied*, 415 U.S. 926, 94 S.Ct. 1433, 39 L.Ed.2d 483 (1974).

Notwithstanding any aspect of the lineup procedures, however, the in-court identification evidence was properly received because the witnesses had a substantial basis for their testimony. Reliability rather than suggestiveness is the linchpin in determining the admissibility of identification testimony. *State v. Charles*, 612 S.W.2d 778, 780 (Mo. banc), *cert. denied*, 454 U.S. 972, 102 S.Ct. 522, 70 L.Ed.2d 392 (1981). Factors to be considered in determining reliability include the opportunity of the witness to view the defendant at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the defendant, the degree of certainty demonstrated by the witness at the confrontation and the length of time between the crime and the confrontation. *State v. Reasonover*, 700 S.W.2d 178, 182 (Mo.App.1985).

In this case, each witness had a significant amount of time to view appellant in the store which was fully illuminated, their attention was fully focused on what was occurring, they were all consistent in their

description of the robber, they were certain that the criminal was appellant and the length of time between the crime and the lineup confrontation was short. The totality of the circumstances fully supports the conclusion that the identifications were reliable and the evidence was entitled to be admitted.

■ In the same point, appellant also contends the identification testimony should have been suppressed because he was not provided counsel at the time the March 6, 1985 lineup was conducted. Appellant was then in custody but the indictment under which he was prosecuted was not filed until July 26, 1985. A pre-indictment, pre-information lineup is not a stage of the prosecution at which a defendant is constitutionally entitled to counsel. *State v. Quinn,* 594 S.W.2d 599, 604 (Mo. banc 1980). *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), cited by appellant, does not apply to a lineup which takes place before a defendant is formally charged. *Kirby v. Illinois,* 406 U.S. 682, 690–91, 92 S.Ct. 1877, 1882–1883, 32 L.Ed.2d 411 (1972).

### VI.

In his final point, appellant contends that the cumulative effect of all of the claimed errors was such that he did not receive a fair trial and should be granted relief. He cites and relies on *State v. Foster,* 665 S.W.2d 348 (Mo.App.1984), among other cases.

*Foster,* and like cases, hold that where review is conducted under the aegis of plain error and no single point may be classified as a miscarriage of justice, the aggregation of points may, nevertheless, combine to persuade the court that the defendant has not received a fair trial. The principal issue in *Foster* was whether the issue of the defendant's character had been injected in the case and whether MAI CR2d 2.50 should have been given.

■ The present case has none of the attributes of *Foster,* even discounting the fact that no assertion of plain error is made here. As the discussion has undertaken to demonstrate in the body of this opinion, none of the allegations of trial error is found to have merit. It necessarily follows, therefore, that in combination, the points can have no greater weight to entitle appellant to a new trial. To the contrary, the evidence of appellant's guilt was strong lending added assurance that the result was correct.

The judgment is affirmed.

All concur.